# CASES DECIDED

IN THE

# SUPREME COURT OF APPEALS

## OF VIRGINIA.

### Wytheville.

PITTARD'S ADMINISTRATOR v. SOUTHERN RAILWAY CO.

June 13, 1907.

1. RAILROADS—*Yards—Sounding Signals—Case at Bar.*—A railroad yard is a place of ceaseless activity, where cars are being shifted and engines moved, and those engaged therein are exposed to more than ordinary danger, and should be alert to guard against such dangers. The sounding of whistles and the ringing of bells at such places is not essential for the protection of employees, but would tend to increase the confusion. In the case at bar, an employee was killed in a railroad yard, but the evidence fails to establish negligence on the part of the company.

2. MASTER AND SERVANT—*Negligence of Servant.*—A master is under no greater obligation to care for the safety of his servant than the servant is to care for himself, and if the servant's negligence is the proximate cause of his injury, he cannot recover of the master.

Error to a judgment of the Corporation Court of the city of Danville in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

VOL. CVII—1

---

---

*Peatross & Harris, B. H. Custer,* and *B. S. Royster,* for the plaintiff in error.

*Harrison & Leigh,* for the defendant in error.

KEITH, P., delivered the opinion of the Court.

This suit was instituted by the administrator of F. L. Pittard to recover damages for his death, alleged to have been due to the negligent act of the Southern Railway Company. The defendant demurred to the evidence introduced before the jury, a verdict fixing the damages at $6,500 was found, the Court entered judgment for the defendant, and the case is before us upon a writ of error.

The evidence tends to prove the following facts: That the deceased was at the time of his death in the employment of the Atlantic & Danville Division of the Southern Railway as a brakeman; that he was engaged in the yards of the railway company in the city of Danville; and that upon the night of the accident two engines, known as a double-header, were taken from the round-house in a northerly direction upon a side-track and then driven, tender in front, along this track about 150 feet to the trestle over Fall Creek. On this trestle there were three tracks—the eastern side-track upon which the double-header was moving, the main line, and to the west of the main line another side-track. The double-header having moved far enough upon the side-track upon which it had entered to clear the main line and leave it free for traffic, the brakeman, who was standing in the space of about five or six feet which intervened between the easternmost of the tracks upon the trestle and the main line, gave the signal to the engineer to slow down, which was done, and the double-header came to a stop. In from three to five minutes after he was last seen by the engineer between the tracks his dead body was found lying upon the main line. He had been struck by an engine moving backward

along the main track in a northerly direction and drawing a caboose car. No one saw the accident, and therefore resort must be had to circumstantial evidence in order to ascertain the manner of his death.

One of the crew of the engine which inflicted the injury says that immediately before the accident he saw the deceased standing on the main line at a distance of three or four car lengths; and that he was giving the stop signal. Witness said that he "thought that he got on the engine; but I never did know what became of him; that the train upon which witness was engaged was moving at a rate of from 20 to 25 miles an hour; that it was running backward; and that there were no lights upon the tender, no bell ringing and no whistle being sounded. Witness also stated that a man could have been seen at a point a car-length's distance from the tender by the engineman sitting in his cab.

It appears that train No. 11 was 15 or 20 minutes behind time, and, at the moment of the accident, was expected in about five minutes, and was entitled to the right of way on the main track. At the time the engine which caused the accident passed, the double-header, to the crew of which the deceased belonged, had come to a standstill. The duty of the deceased with respect to it had for the time ended, and there was nothing for him to do at the moment but care for his own safety.

The yard of a railroad company is the scene of ceaseless activity, the shifting of cars and the movement of engines; and in order to carry on their work and promptly discharge their duties there must be a careful economy of time, and as far as possible every moment must be utilized. Under such conditions, those engaged within yard limits are exposed to more than ordinary peril, and should be on the alert and vigilant to guard against injury from the movement of engines and cars always to be expected. The sounding of whistles and ringing of bells, under such conditions, would not add to the safety of

employees, but serve only to confound them by adding to the confusion.

It is therefore said in section 1258 of Elliott on Railroads, that as to employees, the company is under no obligation to ring the bell or sound the whistle upon a switching engine engaged in making up trains in its yard, for the purpose of notifying such employees, who are familiar with the operation of the yard." *Aerkfetz* v. *Humphreys,* 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758.

Under such conditions, the deceased having given the signal to the double-header to slow down, and having discharged his duty, should have provided for his own safety. According to the testimony of other witnesses, he had ample time after giving the signal to have placed himself in a position of safety. The proof is that he would have been uninjured had he stood between the tracks. He could have gotten upon his own engine. He could have done everything but what he did and have avoided the accident. Even the witness who stood upon the caboose which was being drawn backward by the engine which inflicted the injury, and who saw him giving the stop signal, says: "I thought he got on the engine, but I never did know what became of him," which shows that in the opinion of the witness there was time for him to have gotten upon the engine.

As was said by this court in *Darracott* v *C. & O. Ry. Co.,* 83 Va. 288, 294-5, 2 S. E. 514, 5 Am. St. Rep. 266: "There are certain correlative duties on the part of the employee to the company; one of those is to use ordinary care to avoid injuries to himself; for the company is under no greater obligation to care for his safety than he is himself, and he must inform himself, so far as he reasonably can, respecting the dangers as well as the duties incident to the service. And in general, any negligence of an employee amounting to the want of ordinary care, which is the proximate cause of the injury, will defeat an action against the company."

As we have said, no one witnessed the accident. No one saw the man when he was struck. Just how it happened is in some degree a matter of conjecture; and the circumstances, so far as they are disclosed, indicate that the proximate cause of the injury to the deceased was his want of reasonable care for his own safety rather than the negligence of the defendant in error.

The judgment of the corporation court is affirmed.

*Affirmed.*