Statement.

# Staunton.

NORFOLK & WESTERN RAILWAY COMPANY v. BELCHER'S AD-
MINISTRATRIX.

September 12, 1907.

1. RAILROADS—*Negligence—Employees on Yard—S i g n a l s—Lookout.*—A
railroad company does not owe to its employees engaged on its
yards, over which engines are constantly moving, the duty of sound-
ing whistles, ringing bells or keeping a constant lookout to warn
them of dangers of which they already have knowledge.  Such em-
ployees are exposed to more than ordinary peril, and should be on
the alert and vigilant to guard against injury from the movement
of engines and cars always to be expected.  Those in charge of
switching engines on a yard have the right to assume that em-
ployees on the yard, who are familiar with the dangers of the
place, will lookout for themselves, and will not fail to leave a
place of danger in time to avoid injury.  There can be no recovery
by an employee on a yard who negligently steps on to a track on
which a switching engine and cars are moving in his direction,
and who is there injured by the cars in consequence of inattention
to his surroundings.

Error to a judgment of the Circuit Court of Wise county, in
an action of trespass on the case.  Judgment for the plaintiff.
Defendant assigns error.

*Reversed.*

The opinion states the case.

*Ayers & Fulton, Theodore W. Reath,* and *C. T. Duncan,* for
the plaintiff in error.

*Bond & Bruce, Bullitt & Kelly,* and *Irvine & Morison,* for
the defendant in error.

Harrison, J., delivered the opinion of the court.

This action was brought by the administratrix of O. E. Belcher against the Norfolk & Western Railway Company to recover damages for the alleged negligent killing of the plaintiff's intestate.  The trial resulted in a verdict and judgment for $2,000 in favor of the plaintiff, which we are asked by the defendant company to review.

The petition assigns as error the action of the circuit court in overruling the demurrer to the declaration; its action in refusing to strike out certain words in the declaration alleged to be objectionable; its action in giving and refusing certain instructions; and its action in overruling the motion of the defendant company to set the verdict aside as contrary to the law and the evidence.  All of these assignments of error involve but one proposition of law, which, in our view of the case, can be best considered in connection with the facts applicable thereto.

The plaintiff's intestate was an employee of the defendant railroad company, about seventeen years of age, engaged as a section hand on the railroad yards at Norton, in Wise county. An approaching train made it necessary for the deceased and a co-laborer to leave the track upon which they were working for the train to pass.  They stepped to a place of safety, clear of all tracks, but the deceased, for some unexplained reason, immediately left his position of safety, against the remonstrance of his fellow-workman, crossed the track which he had just left, in front of the approaching train, and took his stand in the center of a parallel track, with his back to an approaching switching engine, which was pushing six cars toward him, and within sixty feet of the nearest car.  The fireman on the passing local train saw the dangerous position of the deceased, and called to him, but he paid no attention, seeming to be oblivious of his peril.  The engineer of the backing switching train did not see the deceased, and his brakeman did not see him until within

fifteen feet of him, too late to save him, though he immediately notified the engineer, who stopped the train as promptly as possible.

The contention of the plaintiff is that it was the duty of those in charge of the backing switching train to keep a lookout to discover persons on the track at the place where the accident happened. In other words, the negligence of the deceased, in leaving his position of safety and putting himself in a place of danger, is, as it must be, conceded; but the doctrine of the last clear chance is invoked in order to fix liability upon the defendant. This theory of negligence on the part of the servants of the defendant, after they discovered, or by keeping a lookout might have discovered, the peril of the deceased, was maintained by the circuit court throughout its rulings on the trial. The fact is established in this case that the engineer in charge of the switching train did not see the plaintiff's intestate at all, and his brakeman did not see him until the car was within a few feet of him.

It is undoubtedly a well-settled general rule, that it is the duty of a railroad company to keep a lookout at all places where passengers and strangers are to be expected upon the track, and that it is liable for injuries which, by the use of ordinary care might have been averted, after the peril of the person injured was discovered, or by the use of ordinary care, might have been discovered. But there is no sufficient reason for enforcing this rule without limitation in a railroad yard, where all of the employees have equal knowledge of the constant shifting of cars in making up trains, and equal facilities for looking out and protecting themselves from the dangers naturally incident to such work. If those in charge of a switching train see an employee in danger, from which there is reason to believe he will not remove himself, they must do all that can be reasonably done to protect him. They cannot wilfully injure him. But they are justified in presuming that the employees on a railroad yard, who are familiar with the constant movements of

such trains, will look out for themselves, and will not fail to leave a place of danger in time to avoid injury; and especially that they will not leave a place of safety and take one of imminent danger without the slightest attention to their surroundings. In a railroad yard there are other things to engage the attention of those in charge of a switching train besides watching the track to see if another enployee is going, contrary to the dictates of prudence and reason, to get on the track and stand with his back to cars moving toward him and in sixty feet of him.

At the time of the accident, the engineer was backing the cars for the purpose of placing them upon the "house track." The brakeman had to give him a signal when that track was reached, and his attention was fixed upon the brakeman, watching for that signal. Under these circumstances, it would have been difficult for either engineer or the brakeman to have had their eyes upon the track when the deceased placed himself upon it.

In the very similar case of *Aerkfetz* v. *Humphreys,* 145 U. S. 418, 36 L. Ed. 758, 12 Sup. Ct. 835, Mr. Justice Brewer, resting the opinion of the court upon the ground that, under the circumstances, there was no negligence on the part of the defendant, says: "The plaintiff was an employee, and, therefore, the measure of duty to him was not such as to a passenger or a stranger. As an employee of long experience in that yard, he was familiar with the moving of cars forward and backward by the switch engine. The cars were moved at a slow rate of speed, not greater than that which was customary, and that which was necessary in the making up of trains. For a quarter of a mile east of him, there was no obstruction, and by ordinary attention, he could have observed the approaching cars. He knew that the switch engine was busy moving cars and making up trains, and that at any minute cars were likely to be moved along the track upon which he was working. With that knowledge, he places himself with his face away from the

direction from which cars were to be expected, and continues his work without ever turning to look. Abundance of time elapsed between the moment the cars entered upon the track upon which he was working and the moment they struck him. There could have been no thought or expectation on the part of the engineer, or of any other employee, that he, thus at work in a place of danger, would pay no attention to his own safety. Under such circumstances, what negligence can be attributed to the parties in control of the train or the management of the yard? They could not have moved the cars at any slower rate of speed. They were not bound to assume that any employee, familiar with the manner of doing business, would be wholly indifferent to the going and coming of the cars. There were no strangers whose presence was to be guarded against. The ringing of bells and the sounding of whistles on trains going and coming, and switch engines moving forwards and backwards, would have simply tended to confusion. The person in direct charge had a right to act on the belief that the various employees in the yard, familiar with the continuously recurring movement of the cars, would take reasonable precaution against their approach. The engine was moving slowly, so slowly that any ordinary attention on the part of the plaintiff to that which he knew was a part of the constant business of the yard, would have made him aware of the approach of the cars, and enabled him to step one side as they moved along the track. It cannot be that, under these circumstances, the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employees, who had, all the time, knowledge of what was to be expected. We see in the facts disclosed, no negligence on the part of the defendants, and if, by any means, negligence could be imputed to them, surely the plaintiff, by his negligent inattention, contributed directly to the injury." See also *Wabash R. Co.* v. *Skiles,* 64 Ohio 133, 60 N. E. 576, 83 Am. St. Rep. 739; *Pittard's Admr.* v. *Southern Ry. Co.* 107 Va. 1, 57 S. E. 561, 1 Va. App. 281.

In the case last cited, Judge Keith, in discussing the correlative duties from employees to the railroad company, says: "The yard of a railroad company is the scene of ceaseless activity, the shifting of cars and the movement of engines; and in order to carry on their work and promptly to discharge their duties, there must be a careful economy of time, and as far as possible, every moment must be utilized. Under such conditions, those engaged within yard limits are exposed to more than ordinary peril, and should be on the alert and vigilant to guard against injury from the movement of engines and cars always to be expected. The sounding of whistles and ringing of bells, under such conditions, would not add to the safety of employees, but serve only to confound them by adding to the confusion.

"It is, therefore, said in section 1258 of Elliott on Railroads, that 'As to employees, the company is under no obligation to ring the bell or sound the whistle upon a switching engine, engaged in making up trains in its yard, for the purpose of notifying such employees, who are familiar with the operation of the yard.' *Aerkfetz* v. *Humphreys*, 145 U. S. 418, 36 L. Ed. 758, 12 Sup. Ct. 835.

"As was said by this court in *Darracott* v. *C. & O. Ry. Co.*, 83 Va. 294-5, 2 S. E. 511, 5 Am. St. Rep. 566, 'There are certain correlative duties on the part of the employee to the company; one of these is to use ordinary care to avoid injuries to himself; for the company is under no greater obligation to care for his safety than he is himself, and he must inform himself, so far as he reasonably can, respecting the dangers as well as the duties incident to the service. And in general, any negligence of an employee amounting to the want of ordinary care, which is the proximate cause of the injury, will defeat an action against the company.' "

Under the facts and circumstances of this case, and in the light of the authorities cited, we are of opinion that the servants of the defendant company were not negligent in failing to keep a constant lookout, in anticipation that the deceased would

be guilty of the reckless act which alone cost him his life. It may be added, that if those in charge of the switching train had been under obligation to keep such a lookout, and had discovered the deceased as soon as he stepped on the track, the theory that the accident might have been avoided is a matter of the merest conjecture and speculation. When the deceased left his place of safety and stepped on the track, where he met his death, he was not more than sixty feet from the nearest car of the switching train that was backing toward him. At the rate of speed the train was moving, that distance would have been covered in seven seconds. The evidence shows that the train could not be stopped in less than fifty-one feet. So that to stop the train before it struck the deceased, the engineer would have had about one second in which to discover the danger, and to determine that, contrary to the dictates of reason, the deceased was going to remain in his position of peril without making the slightest effort to protect himself.

We are of opinion that, upon the facts disclosed by the record, the defendant company was guilty of no negligence, and that the accident occurred solely from a lack of proper attention on the part of the deceased. The judgment must, therefore, be reversed, the verdict set aside, and the case remanded for a new trial, not in conflict with the views expressed in this opinion.

*Reversed.*