# Richmond.

BALTIMORE AND OHIO RAILROAD CO. V. LEE.

November 18, 1909.

Absent, Buchanan, J.

1. RAILROADS—*Personal Injury—Contributory Negligence—Case at Bar.*
A brakeman of a railroad company who is seated in a place of safety in a coach, with no duties to perform until the coach is attached to a train, and who knows that the train of another company which usually attached the coach is being backed in to couple on to the coach and who hears its approach, but needlessly and carelessly steps out onto the platform just at the instant of impact and is knocked off and injured in consequence of the violence of the impact, is guilty of such contributory negligence as bars any recovery for his injuries. The doctrine of the "last clear chance" has no application to such a case.

2. RAILROADS—*Rules Dispensing with Signals on Yards.*—The rules of two railroad companies occupying a joint yard that, in making up and shifting trains in the yard, there need be no white light displayed on the front of the leading car at night, nor any flagman with a signal, are reasonable, and will be upheld.

3. RAILROADS—*Yards—Dispensing with Signals—Notice to Employees.*
It is unnecessary to ring a bell, sound a whistle or display a light in order to give employees on a railroad yard warning of dangers with which they are already acquainted, and of which they have knowledge.

Error to a judgment of the Circuit Court of Rockingham county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Bumgardner & Bumgardner,* for plaintiff in error.

*D. O. Dechert* and *C. R. Winfield,* for defendant in error.

CARDWELL, J., delivered the opinion of the court.

This case was before us on a former occasion, when the judgment of the circuit court in favor of the plaintiff for $3,150 damages was reversed, and a new trial ordered, because of misdirection of the jury in the trial court's instructions. *B. & O. R. Co. v. Lee,* 106 Va. 32, 55 S. E. 1.

At the second trial the evidence was practically the same as at the first, and the defendant demurred thereto, in which demurrer the plaintiff joined, and the court, ruling in favor of the plaintiff on the demurrer to the evidence, entered judgment for the amount of the damages, $3,000, found by the jury, and to that judgment this writ of error was awarded the defendant company.

Of the bills of exceptions taken at the trial, six relate to the admission or exclusion of evidence over the objection of plaintiff in error, and the seventh to the refusal of the court to set aside the verdict of the jury because of improper remarks addressed by counsel for defendant in error to the jury with respect to the *quantum* of damages they should find, etc. In our view of the case it is unnecessary to consider these exceptions.

Modifying the statement of facts in the petition for this writ of error to meet the only objection made thereto by counsel for defendant in error, it is as follows:

"The accident occurred in the Southern Railway Company's yards in the town of Harrisonburg about 8 o'clock in the evening of September 10, 1904. The train crew of the defendant were engaged in the operation of backing an engine and heavy train of freight cars on to a siding known as the 'delivery track,' in order to deliver certain cars which were to go through to Strasburg to the Southern Railway Company. Standing on this siding or 'delivery track' was a 'combination' coach (i. e., a coach with one-half cut off and used as a baggage car and the other half fitted up for the accommodation of passengers) belonging to the Southern Railway Company. This coach had

been left by its crew in a position so close to the end of the siding that the defendant's cars could not be pushed in on the delivery track without striking it and pushing it back. Lee was a brakeman of the Southern Railway Company, and had to let in the Southern engine to take up this train after the defendant's crew had delivered the cars on the siding. For something like half an hour Lee had been seated in that coach waiting for defendant's train to come into Harrisonburg, and, coming out on the platform of the coach nearest the approaching train just about the time the train came in contact with the coach, he was knocked off of the platform on to a pile of loose cinders banked up alongside of the delivery track, and his foot either slipped under the wheels of the moving train, or was crushed between the bank of cinders and the axle-boxes of the wheels.

"The Southern Railway runs into Harrisonburg from the north, and the Valley Railroad, which is operated by the Baltimore and Ohio Railroad Company, from the south. The tracks join about the center of the town, where the Kratzer Road crosses, but there is no break in the physical continuity of the tracks. In other words, there is a single continuous line of main track running through the town and crossing the Kratzer Road, but the tracks north of that crossing, running to Strasburg, belong to the Southern Railway Company, while the tracks south of that crossing, running to Lexington, belong to the Valley Railroad Company, and are operated by the defendant.

"Both roads use the same freight and passenger depots. The passenger depot belongs to the Valley Railroad Company, and is situated south of the Kratzer Road crossing. The freight depot and yards belong to the Southern Railway Company, and are north of the crossing. The Southern trains run over the Baltimore and Ohio tracks to receive and discharge passengers at the passenger depot; while the Baltimore and Ohio trains use the yards of the Southern Railway Company, and run over its tracks to receive and discharge freight at the freight depot.

"In the Southern Railway yards there is a switch or spur

track leading off from the south side of the main track, and extending southward alongside of the main track and only a few feet from it, which is called the 'delivery' track. At the point where the delivery track has diverged sufficiently from the main track to admit of cars passing without striking is the 'clearance post.' This clearance post is 155 feet from the switch at the end of the delivery track, and the north end of the coach on which Lee was stood about twenty-five feet south of this post, making it about 180 feet from the north end of the coach to the switch.

"The Southern Railway Company ran an 'accommodation' train (i. e., a freight train with this accommodation coach attached for the transportation of passengers and baggage) from Strasburg to Harrisonburg in the morning, and Lee was a brakeman on this train. It was the custom to place this combination coach on the delivery track or siding when the train came in the morning and allow it to stand there during the day until made up in the train going out at night, the idle coach being used during the day by the crew as a 'caboose' car for storing their tools and overalls in. . . . . This train was No. 274 of the Southern.

"The Baltimore and Ohio Railroad Company ran a freight train with a passenger coach attached from Lexington to Harrisonburg, which was due to arrive at Harrisonburg at 7 o'clock in the afternoon, known as No. 44. After discharging its passengers at the passenger depot this train would be run down on the main track, passing the line of division, on to the Southern Railway tracks, and passing within a few feet of this stationary coach standing on the delivery track, until it had pulled down clear of the switch—the crew cutting loose the passenger coach and way-car on the rear, which would run back along the main tracks to the Baltimore and Ohio tracks by gravity—then the Baltimore and Ohio train, with the engine pushing it, would back on to this delivery track, coupling to this stationary coach standing there, and continue to push back until

the car nearest the engine of those to be delivered was clear of the clearance post. Then the train was stopped, the cars to be delivered were cut loose, and the defendant's engine and tender with the other cars not to be delivered pulled out of the delivery track, past the switch onto the main track, and then backed onto the defendant's own tracks.

"Strictly speaking, the defendant's crew only had to place the cars to be delivered to the Southern on the delivery track, and it was the duty of the Southern crew to leave the switch clear. The custom appears to have grown up for the Southern crew to leave the coach about opposite the engine-house, which stood some fifty or sixty feet south of the clearance post and 200 feet from the switch, and for the Baltimore and Ohio crew to make the coupling of these cars to that coach, thereby saving extra shifting to the Southern crew in making up their train, as this coach was to go out as the rear car of the train when made up. If, when the car was struck, the coupling was made, the train did not stop—only slowed up before actually coming in contact with the coach—and simply continued to push it back until all of the cars to be delivered were within the clearance post. The coach on this occasion was standing with its rear end about opposite the front of the engine-house, and its front end from fifteen to twenty-five feet inside of the clearance post.

"After these cars were placed on the delivery track and defendant's engine had pulled out of the switch, the cars so delivered were inspected by the proper officer of the Southern Railway Company—an operation which took about half an hour—and if all found in proper condition and accepted, the signal was given and the Southern engine was let in on the delivery track with the balance of the train, coupled up to said cars, thus completing the Southern train, which so made up was taken out to Strasburg. It was Lee's duty to let in this engine.

"Lee was on duty as a brakeman on this Southern train. On this occasion he was front brakeman. On the morning of the

accident he had come down with this train from Strasburg, and was to go back with it in the evening. He was off duty from the time the train came down in the morning until 6 o'clock in the afternoon, at which hour he was required to report back for duty. This train was due to leave for Strasburg at 7 o'clock in the evening, but was required to wait for the arrival of the Baltimore and Ohio train, as it could not be made up until the through cars were delivered. On this particular occasion the Baltimore and Ohio train was about an hour late in arriving from Lexington, so that the train was being made up about 8 o'clock instead of at 7 o'clock as ordinarily.

"The train of cars was approaching the coach on a down grade, and the train consisted of engine and tender and twenty-two freight cars.

"This particular operation of delivering and transferring cars had been conducted in the same manner for many years. Lee had been on this particular run for about a week, but had seen the operation time and again, both in the daytime and at night, and was perfectly familiar with all of the details and with the locality.

"While Lee was technically on duty from the hour of 6 o'clock on, in that he was required to report and be ready for duty at that hour, as front brakeman he had no physical act of duty to perform with reference to that train until after the entire operation was concluded, the cars delivered had been inspected, and the defendant's train pulled out of the delivery track, at which time it became his duty to open the switch and let in the Southern engine to make up their train."

The defense made to the action at the last, as well as at the first, trial was that defendant in error had himself caused the injury he received by his careless and negligent act in stepping out upon the platform of the combination car, in which he was waiting for his work to commence, at the instant that the in-backing train upon the delivery track collided with the car, and this court has ruled upon substantially the same evidence now

before us that there was no proof, or evidence tending to prove, that plaintiff in error had any opportunity, after defendant in error's act, to avoid the injury to him. In other words, upon the evidence, considered under the familiar rule governing its consideration, this court has adjudicated that the doctrine known as the "last clear chance" has no application to the case. *B. & O. R. Co.* v. *Lee, supra.*

The rules of both the Baltimore and Ohio Railroad Company and the Southern Railway Company, in force when this accident occurred, provided that in making up and shifting trains in yards there need be no white light displayed on the front of the leading car at night, nor any flagman with a signal, and the reasonableness of these rules has been sanctioned by this and other courts as well as by law writers (*Pittard* v. *N. & W. Ry. Co.,* 107 Va. 1, 57 S. E. 561; *N. & W. Ry. Co.* v. *Belcher,* 107 Va. 340, 58 S. E. 579; *Aerkfetz* v. *Humphreys,* 105 U. S. 418, 36 L. Ed. 758, 12 Sup. Ct. 835; Elliott on Railroads, sec. 1258); therefore, it would be needless to discuss the question whether or not the accident to defendant in error was alone caused by the failure to ring a bell, sound a whistle or display a light upon the front car of the train backed in on the "delivery track" to be coupled to the combination car in which he was sitting, and to the front platform of which he went just as the shifting train came back upon the car, since he admits, as he was bound to do under the facts and circumstances proved, that he actually heard the backing train approaching. He says: "I heard the train running back, but I didn't think it was so close."

As said by Keith, P., in *N. & W. Ry. Co.* v. *Belcher, supra,* in dealing with similar facts and circumstances: "It cannot be that, under these circumstances, the defendants were compelled to send some men in front of the cars for the sake of giving notice to employees, who had all the time knowledge of what was to be expected."

Conceding, however, for the sake of the argument only,

that the jury would have been warranted in finding, upon the evidence, that plaintiff in error was guilty of negligence in running the cars back upon the delivery track with too great force or speed, and without a light or signal upon the front car which was to be coupled to the combination car in which defendant in error was, and that this negligence contributed to the cause of his injury, the controlling question, in our view of the evidence, is, would the jury have been warranted in finding defendant in error not guilty of negligence contributing directly and proximately to his injury?

It is very true that defendant in error was not the employee of the plaintiff in error, but of the Southern Railway Company, and while it might have been considered negligence on the part of plaintiff in error to push its cars back on the delivery track with greater force than was necessary or usual, still defendant in error was not, by reason of his employment by the Southern Railway Company, or otherwise, relieved of the duty to exercise ordinary care for his own safety. He was entirely familiar, as he admits, with the uses made of the depot and yards at Harrisonburg in common by the two railway companies, of all the surroundings there, and of the dangers incident to the employment he had entered upon and continued, until he was as capable of discovering the dangers attending the operations in shifting cars in and out of the yards as anyone connected with the service of either company. In fact, at the last trial he admitted having made at the first trial the following answers to questions propounded to him:

"Q. How did you know that the B. & O. train was coming in there, Mr. Lee? A. I seen them pulling back down past the car, and they always did back in there.

"Q. Now, when you started to the door to go out, didn't you know that these cars with the engine behind them was being pushed up there to couple to that coach? Was not that what made you get up and start to the door? When you started to the door you knew those cars were backing up to the coach, is

not that so? A. Yes, sir, I knew the cars were going to back up there.

"Q. Exactly; and that is the reason you got up and started to go to the door, is not that so? A. Yes, sir, I knew that they were going to back up there.

"Q. Don't a lot of freight cars, running along that track with an engine behind them, make a little fuss? They make a little more noise than a baby would crawling over a carpet? A. Yes, sir.

"Q. It makes some noise; but didn't it make a noise so that a man within a few feet of it could hear it? A. I could hear the train running.

"Q. Then when you stepped out on the platform, you could hear that train coming rumbling along towards you and close enough to bump you on that instant, and you didn't hear it? A. No, sir, I didn't hear it. I heard the train running back.

"Q. It is true you opened the door and stepped out on the platform? That is true? A. The door was open.

"Q. You didn't have to stop to open the door, but stepped out on the platform of the car; that is true, is it? A. Yes, sir.

"Q. And immediately you turned around and started to step off of the platform? A. Yes, sir.

"Q. But before you got off the platform the collision occurred; the cars came together; that is true? A. Yes, sir.

"Q. And you say you didn't hear that train coming there? A. I heard the train coming back, but I didn't think it was so close . . . It struck the car before I could step off.

"Q. When you stepped on the platform, didn't you hear that train coming? A. Yes, sir.

"Q. You heard the train coming along when you stepped on the platform? A. Yes, sir."

Practically the only modification he made at the last trial of the above statement is that the door of the car was shut as

he was walking towards the end of the car next to the approaching train, and that he opened the door, turned back to get his lantern, and then stepped right out on the platform. The substance of his statement in this connection is that when he saw the Baltimore and Ohio train passing the combination car he was sitting in moving along the main track he knew that it would go up past the switch and then back in on the delivery track, to be there coupled to the combination car, and then taken out by the train of the Southern Railway Company later; yet he unnecessarily left his place of safety and went out upon the front platform of the car, and in such darkness that he could not see the backing train approaching. If it be true, as the learned counsel for the defendant in error argues, that the proof is that it was too dark for him to see the approaching train and there was too much noise about the yards for him to hear it, this would but accentuate the careless and negligent conduct on his part in needlessly going from a place of safety out upon the platform of the car.

It is quite clear from the evidence that the defendant in error carelessly and needlessly went out upon the platform of the combination car at a time when he not only had every reason to expect the train backing in upon the delivery track would reach the combination car, but actually heard the train approaching. He had not been ordered out, nor did any duty he had to perform require him to do this. In fact he could and should have remained in perfect safety until the cars brought in by plaintiff in error's train had been backed up to the combination car, and the engine that had backed them in had gone out upon the main track.

The evidence does not disclose a single act on the part of the servants and employees of plaintiff in error that would have caused injury to defendant in error had he, as was plainly his duty, exercised ordinary care for his own safety. As was said in the opinion of this court when the case was considered on the former occasion (*B. & O. R. Co.* v. *Lee, supra*):

"It appears, without contradiction, that there was no appreciable interval of time, and no opportunity for the defendant, by the exercise of any degree of care, to have avoided the consequences of the plaintiff's act, between his going upon the platform and the accident." *N. & W. Ry. Co. v. Belcher, supra.*

The proof being that he needlessly put himself in the position he occupied when the accident to him happened, and that he simply neglected his own safety, there is no escape from the conclusion that the cause of his injury is attributed alone to his own careless and negligent conduct, for which, upon no principle of law or justice, could plaintiff in error be held liable in damages. *Cranes Nest Coal Co. v. Mace,* 105 Va. 624, 54 S. E. 479; *Chicago, &c., R. Co. v. Houston,* 95 U. S. 697, 24 L. Ed. 542, cited in *Marks v. Petersburg, &c., R. Co.,* 88 Va. 1, 3 S. E. 299, and *N. & W. Ry. Co. v. Wilson,* 90 Va. 263. See also *Jamison v. C. & O. Ry. Co.,* 92 Va. 327, 23 S. E. 758, 53 Am. St. Rep. 813; *Pittard v. So. Ry. Co., supra; N. & W. Ry. Co. v. Belcher, supra.*

The judgment of the circuit court must be reversed, and judgment entered here, upon the demurrer to the evidence, for plaintiff in error.

*Reversed.*