## Richmond

### SOUTHERN RAILWAY CO. v. DARNELL'S ADMINISTRATRIX.

#### November 21, 1912.

1. RAILROADS—*Yards—Negligence of Company.*—The mere fact that an employee is killed by a train in a railroad yard does not excuse a railroad company from liability, if it or its servants were guilty of negligence proximately causing the death, and the employee was not guilty of contributory negligence. In the case at bar, the evidence shows that the defendant was guilty of culpable negligence, for which no excuse has been, or can be, offered, and does not show contributory negligence on the part of the plaintiff's intestate.

2. NEGLIGENCE—*Contributory Negligence—Burden of Proof—Demurrer to Evidence.*—The burden of showing contributory negligence on the part of the plaintiff is upon the defendant, and if, upon a demurrer to the evidence by the defendant, the jury might, with propriety, have found that the plaintiff was without fault, it is the duty of the court to so find.

Error to a judgment of the Circuit Court of Shenandoah county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Downing & Weaver,* for the plaintiff in error.

*Tavenner & Bauserman,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by Lizzie Darnell as administratrix of her husband, Walter Darnell, deceased, to re-

cover of the Southern Railway Company damages for the death of her intestate, alleged to have been caused by the negligence of the defendant company.

Upon the trial there was a demurrer to the evidence filed by the defendant, which was overruled, and judgment given in favor of the plaintiff for the damages ascertained by the jury. This judgment we are asked to review.

Applying the principles applicable where there is a demurrer to the evidence, the record shows that the deceased was a locomotive engineer who had, for some years prior to the accident, run a local freight train from Strasburg to Manassas and return, leaving Strasburg in the morning and returning the evening of the next day. On the morning of the accident Darnell's train was standing in its customary place on what is called the "cinder track," which runs parallel with and very close to the main line of the defendant company and within the limits of what was familiarly known as the "Strasburg yards." His train was headed east and was scheduled to leave for Manassas at 7 o'clock. At this time there was standing at rest on the main line a road engine, which had been used on the yards for switching purposes, also headed east, the direction that Darnell's train was going. The presence of this engine was not known to Darnell, the darkness of the morning (before dawn) preventing its being seen.

Under the rules of the company it was the duty of Darnell to report a sufficient time in advance of the departure of his train to enable him to inspect his engine, to see that it was in safe and proper condition, equipped with an adequate supply of fuel and water, and in all respects ready for its prompt departure at 7 o'clock. Accordingly, Darnell, being called by the company for duty between 5 and 6 o'clock of a very dark January morning, proceeded, with light in hand, by the usual and only practicable route always pursued by himself and the other employees of the

company to his post. His first duty was to go to the company's tool house for the necessary tools needed on his trip. This house was located on the south side of the tracks, and after getting his tools he could not reach his engine without crossing tracks and walking on the main track to his engine, the cylinder cock of which he found leaking and emitting large volumes of steam. While thus enveloped in the darkness and additionally obscured by the steam, the road engine, which was standing forward upon the main line, silently moved backwards from its position of rest, in the darkness, without light, without sound of bell, blast of whistle or other signal, being on its way to a station a mile or more distant, with the necessary result, under the circumstances, that Darnell was run upon and killed. Those in charge of this engine knew the location of Darnell's train, for they had placed it where it was. They knew, or ought to have known, that it was the time he would be inspecting his engine and getting ready to start, and yet, boxed up in the engine, without any light displayed, without sounding a whistle or ringing a bell, with the sound of the moving engine deadened by the snow which covered the ground, and in total darkness, they moved off to the destruction of their unconscious victim. This action of the crew in charge of this backing engine was in utter disregard of the rules of the company. Without rules, however, for their guidance, it would have been culpable negligence for which no excuse has been, or can be, offered.

The defendant seeks to avoid the result of such carelessness upon the ground that the accident occurred in a railroad yard, where it is contended the company was under no obligation to give Darnell any warning whatsoever, notwithstanding the conditions existing at the time, and in support of this contention reliance is placed upon the cases of *Pittard* v. *Southern Ry. Co.,* 107 Va. 1, 57 S. E. 561, and *N. & W. Ry. Co.* v. *Belcher,* 107 Va. 340, 58 S. E. 579.

We have no disposition to recede from the doctrine announced in those cases, and are under no necessity to do so in order to reach the manifest ends of justice in the case before us.   In the cases mentioned the court was dealing with the relations and duties, as between each other, of yard employees while engaged in the discharge of their several duties when at work on railroad yards.   Those cases do not hold, and were never intended to hold, as seems to be thought, that a railroad company is exempt from all liability, as matter of law, because of the bare fact that the wrong complained of was perpetrated within the limits of a railroad yard.   Even upon the regular employee in a railroad yard the company may inflict an injury so unnecessary and wanton as to make the company liable. *A fortiori* is this true of those who are not yard employees, whose duties, however, may carry them temporarily upon the yard.

In the *Pittard case,* Judge Keith, in speaking generally of railroad yards, describes them as "scenes of ceaseless activity, the shifting of cars and the movement of engines; that in order to carry on their work and promptly discharge their duties there must be a careful economy of time, and as far as possible every moment must be utilized; that under such conditions, those engaged within yard limits are exposed to more than ordinary peril, and should be on the alert and vigilant to guard against any injury from the movement of engines and cars always to be expected; and that the sounding of whistles and ringing of bells, under such conditions, would not add to the safety of employees, but serve only to confound them by adding to the confusion."   Then, quoting with approval, Elliott on Railroads, and citing *Aerkfetz* v. *Hamphreys,* 145 U. S. 418, 36 L. Ed. 758, 12 Sup. Ct. 835, it is held that as to yard employees the company is under no obligation to ring the bell or sound the whistle upon a switching engine in

making up trains in its yard for the purpose of notifying such employees who are familiar with the operation of the yard.   Among the conditions mentioned in these cases, as the foundation for the rule therein announced, there is not one that exists in the case at bar, except the bare fact that the injury complained of was inflicted within the limits of a railroad yard.   There was at the time no ceaseless activity; in fact, there was no activity at all.   It was at the darkest hour of the night and the yard in total darkness, except a few scattered switch lights, which had no effect in dissipating the blackness of the night.   The offending engine was one not customarily used for yard service, but was a common road engine, and so far as appears to the contrary was the only engine, other than Darnell's, that was at the time on the yard.   It had completed its work and was not engaged in shifting cars, but was standing silently at rest on the main line when Darnell went to his work, and when it did move it was not for the purpose of doing any work on the yard, but to proceed on the main line to a distant station, far beyond the yard limits.   The deceased was not a yard employee, but was engaged in an entirely different branch of the service and was on the yard temporarily for the purpose of taking charge of his freight train and proceeding on his journey to Manassas.   There was no one on the yard at the time to be confused or confounded by blowing the whistle and ringing the bell of this engine, or otherwise notifying Darnell, who was ignorant of its presence, that it was about to be backed upon him in the dark.

Every case of negligence is controlled by its own peculiar facts and circumstances.   The conditions existing in the case at bar are wholly dissimilar from those in the Pittard and Belcher cases, and the principles announced in the latter have no application in determining the rights of the parties in the present case.

We are of opinion that the evidence clearly establishes

the negligence of the defendant, and we are further of opinion that the alleged contributory negligence of the plaintiff's intestate has not been shown.   The burden of establishing contributory negligence rested upon the defendant, and if the case had not been withdrawn from the jury by the demurrer, they might with great propriety have found that the plaintiff's intestate was without fault.   This being so, the court must so find.   *Lane Bros.* v. *Bott,* 104 Va. 615, 52 S. E. 258; *C. & O. Ry. Co.* v. *Corbin,* 110 Va. 700, 67 S. E. 179.

The judgment of the circuit court is plainly right, and must be affirmed.

*Affirmed.*