# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## SOUTHERN RAILWAY CO. V. TYREE & ADMINISTRATOR.

### November 21, 1912.

1. RAILROADS—*Yards—Through Trains—Negligence.*—The rules applicable to employees working on railroad yards, and to signals by yard engines, have no application to a regular train passing through a yard on a regular through run over the main line. In the latter case there are no duties upon the engineer and fireman, except the usual duty of looking ahead and attending to the proper operation of the train. A through train upon the main line has the same independence of position and action within yard limits that it has outside, and no reason can be given for exempting the engineer and fireman from exercising the same care in passing through yard limits that they must exercise elsewhere. Indeed, the increased danger of doing injury on the yard would seem to call for greater alertness to avoid it.

2. DEMURRER TO EVIDENCE—*Negligence—What Jury Might Have Found.* If, in an action for wrongful death, the jury might reasonably and with propriety have found that the defendant was guilty of negligence and that the deceased was free from contributory negligence the court must so find on a demurrer to the evidence by the defendant.

3. DEATH BY WRONGFUL ACT—*Elements of Damage—What Need Not Be Considered.*—In estimating the damages to be assessed for death by wrongful act or neglect, the jury should fix the sum with reference to the pecuniary loss sustained by the surviving wife and children of the decedent by reason of his death, taking into consideration his age, earning capacity and experience, and for the purpose of ascertaining the probable duration of his life, the jury have the right to have reference to scientific mortality tables; and they should add thereto compensation for the loss of his care, attention and society, and, further, such sum as they may deem fair and just by way of solace and comfort to his wife and children for the sorrow, suffering and mental anguish occasioned to them by his death. Under the established doctrine in this State, the above elements of damage sufficiently represent the measure of the plaintiff's

recovery, and it is not necessary for the jury to consider the number of years the deceased would have earned a *diminished* salary, or no salary at all, nor what sum should be deducted from his salary for the personal expenses of the decedent.

Error to a judgment of the Circuit Court of Amherst county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

At the instance of the plaintiff, the court gave the following instruction:

"In ascertaining the damages in this case the jury should find the sum with reference:

"First. To the pecuniary loss sustained by the wife and children of the said R. L. Tyree by the death of the said R. L. Tyree, fixing the sum at such sum as would be equal to the probable earnings of the said R. L. Tyree, taking into consideration the age, earning capacity, and experience of the deceased during what would probably have been his lifetime.

"Second. In ascertaining the probability of life, the jury have a right to determine the same with reference to recognized scientific tables relating to the expectation of human life.

"Third. By adding thereto compensation for the loss of his care, attention and society to his said wife and children, and

"Fourth. By adding such further sum as they may deem fair and just by way of solace and comfort to the said wife and children for the sorrow, suffering and mental anguish occasioned to them by his death."

And, at the instance of the defendant, the court also gave the jury the following instruction, namely:

"The court instructs the jury that even if they believe from the evidence that the plaintiff's decedent's expectation of life at the time of his death was between thirteen and fourteen years, it would not be proper, in fixing the amount of recovery on the score of the loss of his earnings to the beneficiaries of this action, to multiply the amount of his annual wages or salary by the number of years of his expectation of life."

The following instructions tendered by the defendant were refused:

### A.

"The court instructs the jury that it is proper not only that they should assume that the decedent, at the time of his death, had probably reached his highest earning capacity, but also that probably he might have worked for diminished wages or salary in the latter years of his life, or have ceased altogether in the latter years of his life to earn any salary or wages."

### B.

"The jury are further instructed that, in fixing the amount of recovery on the score of the loss of the earnings of the decedent to the beneficiaries of this action, the jury, after deciding from the evidence and their own observation and experience how many years the decedent would probably have earned salary or wages, and the probable average amount of his earnings annually, should multiply the probable average earnings of the decedent, *not* by the number of years he would probaly have *lived* according to the evidence, but by the number of years the decedent would probaly have earned salary or wages; and *then* the jury should calculate the *present value* of the product so found. If the jury find themselves unable to make this calculation, the court will assist them in doing so, or have the calculation made for them by a competent person."

### C.

"After fixing the probable average annual earnings of the decedent, the jury should deduct therefrom a reasonable portion thereof for the decedent's own personal expenses each year; and they should also deduct from the amount allowed on account of the prospective earnings of the decedent a reasonable sum in view of the probability that the decedent might have become a charge on his children in the latter years of his life—this deduction to be made from the portion of the verdict in favor of the children."

### D.

"The court instructs the jury to state and set forth in their verdict the sum found and allowed by them for the loss of the earnings of the decedent to the beneficiaries of this action."

The opinion states the case.

*Coleman, Easley & Coleman,* for the plaintiff in error.

*Aubrey E. Strode* and *Volney E. Howard,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This suit was brought to recover damages for the alleged negligent killing of the plaintiff's intestate by the defendant railway company. There was a demurrer to the evidence by the defendant, which was overruled, and judgment was given the plaintiff for the damages ascertained by the jury. This action of the circuit court is brought under review by the present writ of error.

Viewed from the standpoint of a demurrer to the evidence the following facts are established: The deceased was an employee of the defendant on its yards at Monroe,

in Amherst county. His duty was to go to the lodging places of men composing the crews of expected trains and awaken them for service thereon. On the night of his death the deceased, to awaken a crew for an expected "perishable" train, about 2 o'clock A. M., left the company's depot to go to its Young Men's Christian Association building, one of the lodging houses of the men, situated on the opposite side of the tracks and about 200 yards south of the depot. The night was dark and he carried a lantern in his hand. In going to and returning from the Y. M. C. A. building the deceased pursued the usual route taken by the employees and the public generally, with the knowledge and acquiescence of the company—indeed no other practicable route was provided—and this route necessarily involved crossing the railroad tracks. In returning from the Y. M. C. A. building the deceased was run upon and killed by an engine drawing a through passenger train going north, which was about fifteen minutes late and running down grade, with the steam shut off, at an estimated speed of thirty miles an hour. The engine of this passenger train was without the usual light in front of it, and without light in the cab. The engineer says the whistle blew when the train was three-fourths of a mile from the yards, and the bell was rung in the yards. The evidence of the plaintiff is that no sound of bell or whistle was heard in the yard or elsewhere until the short danger blast was sounded almost simultaneously with the impact of the engine and the deceased.

The defendant insists that inasmuch as this accident occurred in its yard it was under no obligation to warn the deceased of the approach of this through passenger train by the use of an efficient headlight, or sounding a whistle, or ringing a bell, or slackening its speed and running its train under control; and the cases of *Pittard* v. *Southern Ry. Co.,* 107 Va. 1, 57 S. E. 561, and *N. & W. Ry.*

*Co.* v. *Belcher,* 107 Va. 340, 58 S. E. 579, are relied on to sustain this contention.

These cases have no application to the facts disclosed by this record. In both the cases relied on the injuries were inflicted on yard employees, within yard limits and by yard engines. The reasons leading to the conclusion reached in those cases with respect to the operations of a railroad yard do not exist in the case of a through passenger train, running on schedule time over the main line. The reasons are obvious which justify a railroad in dispensing with ordinary signals and lookouts in the work of shifting engines on railroad yards, and in placing upon the employee there a higher degree of care for his own safety from such engines; but they are without force when applied to the case of a regular train on a regular through run over the main line. In the latter case there are no duties upon the engineer and fireman except the usual duty of looking ahead and attending to the proper operation of the train. A through train upon the main line has the same independence of position and action within yard limits that it has outside, and no reason can be given for exempting the engineer and fireman, engaged in the operation of a through passenger train, from exercising the same care in passing through yard limits that they must exercise elsewhere. Indeed, the yard being a place of ceaseless activity, they should be more on the alert to avoid injury because of the increased danger of harm occasioned by the environments.

It is unnecessary to review the evidence adduced in this case to sustain the judgment complained of. It is sufficient to say that if the case had gone to the jury they might readily and reasonably have found that the plaintiff's intestate lost his life without fault on his part, and solely as a result of the negligent operation of its passenger train by the defendant company. It is well settled that if the jury might find the defendant guilty of negli-

gence and the deceased free from contributory negligence, the court must so find on a demurrer to the evidence. *Bass v. N. & W. Ry. Co.,* 100 Va. 8, 40 S. E. 100; *C. & O. Ry. Co. v. Hoffman,* 109 Va. 44, 63 S. E. 432.

The action of the court in giving and refusing instructions which relate solely to the measure of damages is assigned as error. This objection is without merit. The elements of damage and the rules for their ascertainment by a jury in the case of death by wrongful act have been so long and thoroughly established by this court that citation of authority on the subject is unnecessary. The action of the circuit court touching this matter is in conformity with our decisions, and we have no disposition to depart therefrom, and adopt the new elements of damage suggested for the jury's consideration by the instructions refused.

Upon due consideration of the whole case, the judgment must be affirmed.

*Affirmed.*