# Wytheville

## Morris S. Hawkins and L. H. Windholz, Receivers, Etc. v. Luvania E. Beecham, Adm'x, Etc.

June 10, 1937.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*James G. Martin & Son*, for the plaintiffs in error.

*Venable, Miller, Pilcher & Parsons* and *Kelsey & Jett*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is an action brought by Luvania E. Beecham, Administratrix of William H. Beecham, against the Receivers of Norfolk Southern Railroad Company to recover damages for the death of her intestate. There was a judgment for the plaintiff. Defendants assign error.

On the evening of April 17, 1935, at about 7:20, William H: Beecham was run over and killed by a train under the defendants' control. On that day the sun set at 6:41. It was misty but not raining. Visibility was not good, but one could be seen for a considerable distance.

The point of accident was in the suburbs of the city and within the yard limits of the defendants. The road itself runs from Norfolk to Cape Henry and elsewhere, and had on its bed at the place of accident double tracks, which run east and west. Over them trains are operated both by steam and electricity. Through trains usually move on the right-hand tracks, but within the yard itself, and particularly in the shifting of cars, they move in either direction indiscriminately. Just to the north, and practically parallel, runs Olney Road, a paved highway but without sidewalks. It, like many other highways, is not safe for pedestrians, many of whom prefer to take the chance of being run over by a train rather than by an automobile, and so walk upon the tracks rather than upon the public roadway. They are not wanted and they know that they are not wanted. To their incursion the railroad had to submit because there was little else that it could do. By courtesy called licensees, they are in fact little better than trespassers. Courts have long struggled with their status, but it has come to be as well settled as are most other legal problems.

Beecham was a watchman in the Receivers' shops which lay to the east. He was off duty, was going home and was walking in a westerly direction on the southside track. These tracks pass over a shallow trestle about 55 feet long, which crosses a small creek or gut of water, and, as they cross this trestle, are connected by heavy beams or braces about 10 feet apart.

There was no witness to the accident but Beecham's body was found cut in two about 10 feet to the west of the trestle's

end. There was a blood spot about 10 feet to the east of that end and about 7 ties from it which would seem to indicate the point at which he was struck and from which his body was carried to the place at which it was found.

He was last seen alive at a point between 100 and 125 feet east of the trestle's end, where he was met by three people who spoke to him as they passed. He continued on his way to the west and soon afterwards a train passed going in the same direction. This train was made up of two electric engines or motors and a box car. The motive power was supplied by the rear engine or by the engine to its east. Next came an idle electric engine or motor and next came a box car which was being pushed forward from the motor to the rear. The engineer or operator of this motor was at his post on the northeast corner of his engine. Across from him sat a *"quasi"* fireman, in which on a steam engine would be the fireman's seat. On the box car was a brakeman, who stood on a ladder at its northwest corner but high enough to look over the top of the car itself. He carried a lighted lantern intended probably to be used in giving signals to the motor driver. This crew was then on its way to pick up for delivery another car. The engine, just before it reached Sedgewick Avenue and a little more than a block from the trestle, blew for that crossing and after it had crossed Sedgewick Avenue it again blew for the next crossing, Granville Avenue, something like two blocks to the west. In addition to these signals the engine or motor bell was being rung continuously. The motor itself made considerable noise and could have been heard for some distance before this train reached Beecham. The brakeman or watchman on the box car never saw him. Had he been looking, he could have seen him. It is true that it was then dusk, but it was not yet too dark.

In argument Beecham's negligence was conceded, but plaintiff contends that her judgment rests and properly rests upon the doctrine of the last clear chance. The applicability of that doctrine to the facts stated, as to which there is no real conflict of evidence, is the sole problem here presented.

██ Attached to railroad yards are certain distinguishing

characteristics. They are places of unending labor. There engines and cars move at will at all hours in all directions and for convenience either forward or back. Those who work there assume such hazards as are incident to their employment.

"The yard of a railroad company is the scene of ceaseless activity, the shifting of cars and the movement of engines; and in order to carry on their work and promptly discharge their duties there must be a careful economy of time, and as far as possible every moment must be utilized. Under such conditions, those engaged within yard limits are exposed to more than ordinary peril, and should be on the alert and vigilant to guard against injury from the movement of engines and cars always to be expected. The sounding of whistles and ringing of bells, under such conditions, would not add to the safety of employees, but serve only to confound them by adding to the confusion." *Pittard's Adm'r* v. *Southern Ry. Co.*, 107 Va. 1, 57 S. E. 561.

To the same effect is *Aerkfetz* v. *Humphreys*, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758.

In both of these cases the party injured was working in the company's yard and this rule is sometimes applied to employees not actually on duty there, provided their duties are such as necessarily familiarize them with yard movements.

*Chesapeake & Ohio Ry. Co.* v. *Nixon*, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914; *Hines, Agent* v. *Hopkins* (1922) 194 Ky. 441, 239 S. W. 792.

But it is not true that railways are relieved from all liability for yard accidents. In *Southern Railway Co.* v. *Darnell's Adm'x*, 114 Va. 312, 76 S. E. 291, 292, this court said:

"Those cases do not hold, and were never intended to hold, as seems to be thought, that a railroad company is exempt from all liability, as a matter of law, because of the bare fact that the wrong complained of was perpetrated within the limits of a railroad yard. Even upon the regular employee in a railroad yard the company may inflict an injury so unnecessary and wanton as to make the company liable. *A fortiori* is this true of those who are not yard employees, whose duties, however, may carry them temporarily upon the yard."

This is but another way of saying that reasonable care must be exercised. What is reasonable care varies with varying conditions. One may not wantonly run down even the most unquestioned of trespassers.

Certain qualifications of the doctrine stated in the *Pittard Case* appear in *Davis, Director General* v. *Ellis, Adm'x*, 146 Va. 366, 126 S. E. 658, 131 S. E. 815, and in *Froman* v. *Chesapeake & O. Ry. Co.*, 148 Va. 148, 138 S. E. 658. However, in both cases there were dissenting opinions. In the latter case the dissent was by Prentis, P., and Burks, J., but they only indirectly touch the issue here. Beecham was not a yard employee, and he was not employed to perform duties which of themselves familiarized him with yard movements but was a watchman in distant company shops. In walking upon this trestle he walked where many others were accustomed to walk.

*Blankenship* v. *Chesapeake & Ohio Ry. Co.*, 94 Va. 449, 27 S. E. 20, 22, is a case in which a child was injured while crossing a railway yard. The court said:

"The uncontradicted evidence in this cause shows that the defendant knew that hundreds of men, women and children were passing over and along its tracks in the yard daily. It was its duty, therefore, to exercise reasonable care to discover and not to injure persons whom (whether they were trespassers or licensees), it might reasonably expect to be on its tracks at that point, and, as it owed this duty alike to licensees and trespassers under the peculiar facts of this case, it was not necessary for the court to give instructions to the jury as to whether the plaintiff was a licensee or trespasser."

In *Chesapeake & O. Ry. Co.* v. *Rogers' Adm'x*, 100 Va. 324, 41 S. E. 732, we find that Rogers, a pedestrian, was killed upon a trestle in constant use by pedestrians. The court said that whether he be regarded as a trespasser or as a licensee it was the road's duty in these circumstances to use reasonable care to discover him and his peril.

In *Washington & O. D. Ry.* v. *Ward's Adm'r*, 119 Va. 334, 89 S. E. 140, 143, it appears that a child was killed upon a

bridge in constant use by pedestrians and children. Kelly, J., said:

"Railroad companies do not owe any duty of *prevision* to licensees, but must, with the facilities at hand and under the circumstances as they exist at the time, exercise reasonable care to discover and avoid injuring them."

See also, *Shiveley's Adm'r v. N. & W. R. Co.*, 125 Va. 384, 99 S. E. 650.

In *Chesapeake & O. R. Co. v. Bullington's Adm'r*, 135 Va. 307, 116 S. E. 237, Kelly, P., quotes with approval headnotes 5 and 6, *Chesapeake & O. Ry. Co. v. Saunders' Adm'r*, 116 Va. 826, 83 S. E. 374. They read:

"5. * * * It is not the duty of a railroad company to have a lookout on its front car, or to make any previous preparation for the discovery of licensees on its track. A bare licensee is only relieved from the responsibility of being a trespasser, and takes upon himself all the ordinary risks attached to the place and the business carried on there.

"6. * * * A railroad company does not owe to a licensee the duty of running its train in a particular manner, or at a particular rate of speed, and is under no obligation to keep a lookout on its car, or ring its bell, or to blow its whistle, and the mere failure to do any or all of these things does not give him a right of action."

The facts in these cases are very much like those in judgment. They were not, however, yard cases, and so the duties of the railroad were certainly not greater than in cases like this.

These damage cases are without number. They shade into each other, and it is not always easy to draw a line of demarcation. Neither as to bare licensees nor as to trespassers is there any duty of prevision. Preparations for their discovery are not necessary, and it is not necessary to have a lookout on the front car, for such would be a preparation for their discovery. But where the roadbed is used as a walkway by many people, when this fact is known, reasonable care is necessary—headlights are not; a special lookout is not, neither are movements in any particular manner, for, as we have seen, prevision is not required. What is reason-

able care, with facilities at hand and under circumstances as they exist, is, within fair limits, a jury question. Here a man was stationed on the forward car. He tells us that his duty was to keep a lookout, and so we have the construction which the road itself placed upon its duty. A lookout's duty is to look, and his negligence should be charged against the master.

Of course it is true that negligence must be proven, and it is not proven by the mere fact that a body was found by a railroad track which apparently had suffered death from a passing train. *Southern Ry. Co.* v. *Hall's Adm'r*, 102 Va. 135, 45 S. E. 867; *Southern Ry. Co.* v. *Adams*, 129 Va. 233, 245, 105 S. E. 566.

Negligence and an accident, however, do not make a case. As between them there must be causal connection. "The evidence tending to show causal connection must be sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference, before a question of fact for submission to the jury has been made out." *Virginian Railway Company* v. *Haley*, 156 Va. 350, 157 S. E. 776, 786; *Gunter's Adm'r* v. *Southern Ry. Co.*, 126 Va. 565, 101 S. E. 885.

"Peradventure" is not enough. *Washington, etc., Ry.* v. *Thompson*, 136 Va. 597, 118 S. E. 76. "Perhaps" is not enough. *Virginia Electric & Power Co.* v. *Vellines*, 162 Va. 671, 175 S. E. 35.

With these principles in mind, we come to the claim on which plaintiff has pitched her case. She contends that the doctrine of the last clear chance should be applied.

That doctrine has been so often and so satisfactorily discussed in the decisions of this court that one hesitates to restate or to paraphrase what has been already written. A distinguished judge once observed that it was "somewhat overworked."

In *Norfolk Southern R. Co.* v. *Smith*, 122 Va. 302, 94 S. E. 789, 790, Judge Prentis said:

"The doctrine of the last clear chance has nowhere been better stated than in the syllabus to the case of *Roanoke*

*Ry. & Electric Co.* v. *Carroll,* 112 Va. 598, 72 S. E. 125, thus: 'The underlying principle of the doctrine of the "last clear chance," as declared by the decisions of this court, is that, notwithstanding the contributory negligence of the plaintiff, there is something in his condition or situation at the time of the injury to admonish the defendant that he is not able to protect himself. The doctrine is one of prior and subsequent negligence, or of remote and proximate cause, and presupposes the intervention of an appreciable interval of time between the prior negligence of the plaintiff and the subsequent negligence of defendant. Where the negligence of both continues down to the moment of accident and contributes to the injury, the case is one of concurring negligence, and there can be no recovery.' "

The defendants are charged with knowing what the watchman should have known had he kept a proper lookout and no more.

One, at least, of two conditions must precede the application of the doctrine. There must have been something in the attitude of Beecham to indicate that he was unconscious of his danger, or he must have been in a position of peril from which, apparently, he could not extricate himself. Proof of these facts or of one of them rests upon the plaintiff. It must also appear that the chance was clear.

"In order to apply that doctrine, the burden is upon the plaintiff, who is confessedly negligent, to prove by a preponderance of the testimony that after his peril became imminent there was a clear opportunity afforded the defendant to save him from the consequences of his own negligence, and this fact must be proved like any other fact upon which the plaintiff relies." *Hendry* v. *Virginia Ry. & P. Co.,* 130 Va. 282, 283, 107 S. E. 715, 716.

Defendants' train was moving slowly; its bell was ringing, and there is nothing in this record to show that Beecham was unconscious of his danger or that he could not, by quickening his steps, have reached in ample time the end of the trestle and a place of safety. In order to sustain a recovery we must assume, without proof, that he was uncon-

scious of his danger or was unable to evade it. No one knows what happened. There is no evidence to take this case out of the realm of speculation or conjecture. The plain truth is that nobody knows how this distressing accident occurred. We do know that both the plaintiff's decedent and the defendants were negligent, but that is not enough.

For reasons stated, the judgment of the court below should be reversed and final judgment entered for the defendants. It is so ordered.

*Reversed.*