# Richmond

## Norfolk Southern Railway Company v. Sadie Wood, Administratrix, Etc.

December 6, 1943.

Record No. 2713.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Fred E. Martin* and *James G. Martin & Son*, for the plaintiff in error.

*Broudy & Broudy*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Norfolk Southern Railway Company obtained this writ of error to a judgment on a verdict for $5,000, returned against it in an action to recover damages for the wrongful death of Henry Wood, an infant.

Assignments of error numbered 1, 2 and 3 are based on the contention that the evidence was insufficient to support a verdict for plaintiff.

Norfolk Southern Railway Company, as a part of its railway system, maintains over its own right-of-way a double-track line from Norfolk to Virginia Beach. In the suburbs of the city of Norfolk these double tracks cross a ravine or depression on a wooden trestle. This trestle is 56 feet long. At the two ends of the cross-ties over the trestle there are large wooden beams, called "guard rails," parallel with and about 18 inches from the two outside rails of the double track. Four large timbers several feet apart, called "bents," extend at right angles several feet beyond the guard rails. The tops of these bents are two feet or more below the top of the guard rail.

On August 28, 1942, about 4:40 p. m., a streamlined gasoline railbus, operated by E. A. Gettel, the motorman, was *en route* from Norfolk to Virginia Beach. W. H. Dawley, another employee of the railway company going home from work, was sitting or standing to the left of the motorman and facing the glass window of the vestibule. As this railbus crossed the trestle, it struck and killed Henry Wood, a child ten years of age, as he was crawling between the right-hand steel rail and the guard rail.

Defendant contends that the evidence conclusively shows that "as the railbus got nearly to the trestle, less than 100 feet from where the child was struck, *suddenly* a child * * * was seen by Gettel and Dawley (substantially at the same moment), to come up from the right-hand side of the right-hand rail *from below* the right-hand side, in a crouching position towards the rail. The motorman threw on his brakes in emergency as promptly as he could, which was all that could be done * * * ." Traveling at the rate of speed proven—namely, from 15 to 30 miles an hour—the railbus could have been stopped within 150 feet.

However, Roy Williams Kight, the third eyewitness to the accident, stated that he was working on top of a box car 120 yards from the trestle and had an unobstructed view

of the approaching railbus and Henry Wood. He stated that, at the time the railbus was approximately 360 feet from the trestle, the motorman, Gettel, was looking in the direction of the box car and not down the track. At the same moment this witness noticed Henry Wood on the trestle in a crouching position crawling with his back to the approaching railbus. Kight shouted at the boy to jump, but the boy failed to heed the warning and continued crawling. He crawled over 17 cross-ties from the center to the far end of the trestle while Kight was watching him and the approaching railbus.

The testimony of this eyewitness is sufficient to take the issue—whether the motorman could have discovered the deceased in time to stop the railbus before the impact if he had used reasonable care and kept a proper lookout in approaching the trestle—to the jury.

While numerous exceptions were taken to the instructions given or refused, it is not deemed necesary to discuss them *seriatim*.

One of defendant's main contentions is that Henry Wood was a trespasser.

The uncontradicted testimony reveals that the trestle was in common use as a walkway by men, women and children and had been so used both day and night for a period of more than twenty years. Indeed, the same trestle was the scene of another fatal injury, described in *Hawkins* v. *Beecham*, 168 Va. 553, 191 S. E. 640. There it was held that pedestrians using this trestle as a footway were licensees and not trespassers. In that case we quoted from *Blankenship* v. *Chesapeake, etc., Ry. Co.*, 94 Va. 449, 27 S. E. 20, as follows: "It was its (defendant's) duty, therefore, to exercise reasonable care to discover and not to injure persons whom (whether they were trespassers or licensees) it might reasonably expect to be on its tracks at that point, and, as it owed this duty alike to licensees and trespassers under the peculiar facts of this case, it was not necessary for the court to give instructions to the jury as to whether the plaintiff was a licensee or trespasser."

In the argument, it was suggested by counsel for defendant that the failure to give an instruction on the question left the jury under the impression that the deceased, while on the trestle, was an invitee of the railway company. This contention is not supported. While the trial court refused to permit the attorneys for the defendant, in their argument to the jury, to refer to the child as a trespasser, it defined the status of the child in instruction 6-DD, granted at the request of defendant and reading as follows:

"The Court instructs the jury that the fact that the Railroad Company was put on notice that men, women and children used its roadbed and trestle as a walkway, and hence the Railroad employees were required to use ordinary care to look out for persons so using said roadbed and trestle, does not require that the motorman should have anticipated that a person would be crawling along the bridge; and the jury is instructed that unless you believe from the evidence that the motorman could have discovered the deceased before he did, in the exercise of ordinary care as defined herein, and thereafter had a last clear opportunity to stop the railbus and avoid striking deceased, then you must find your verdict for the defendant."

We find no error in the rulings of the trial court on this issue.

The principle of law raised by another contention is whether a ten year old child should be held guilty of contributory negligence as a matter of law.

The jury were told in plain unambiguous language that the law presumes a child between the ages of seven and fourteen to be incapable of committing acts of negligence, and that the burden is on the opposite party to overcome this presumption, unless such capacity is disclosed by plaintiff's own evidence. The instructions given on the subject conform to this principle, and the issue was properly and fairly submitted to the jury.

Another question raised is the degree of care defendant owed the licensee under the circumstances.

Defendant contends that plaintiff was not entitled to recover unless plaintiff proved defendant was guilty of gross negligence. In support of this contention, it cites *Ingle* v. *Clinchfield R. Co.*, 169 Va. 131, 192 S. E. 782. The facts in that case were that a mother and three children were walking along a pathway which was on the right-of-way only four feet from the end of the cross-ties. The mother heard the train approaching several hundred yards behind her. She called to one of the little girls who was 100 to 150 feet in front of her. The child did not heed her mother, and suddenly turned toward the tracks when the engine was only 100 feet away and approaching down grade at 35 miles an hour. When the child stepped upon the tracks the engineer sounded his whistle, applied his emergency brakes and stopped the train, but too late. The railroad company's demurrer to the evidence was sustained by the trial court, which ruling was approved on review by this court.

The excerpt from the opinion quoted by defendant is found in that part of the opinion discussing the duty owed to the infant in control of her mother while using a pathway on the right-of-way. An examination of the Virginia cases, cited to support the statement in the *Ingles case, supra*, clearly shows that this court has consistently held that, where a railroad company knows that its right-of-way is in constant use by pedestrians, it must exercise reasonable care *with the facilities at hand and under circumstances as they exist at the time to discover and avoid injuring them.* Preparation for the discovery of such pedestrians is not necessary, as no prevision is required. What is reasonable care, with the facilities at hand and under circumstances, as they exist, is, within fair limits, a jury question. Mr. Justice Holt, speaking for the court in *Hawkins* v. *Beecham*, *supra*, definitely determined the degree of care this defendant owed to a pedestrian on this trestle. Any further discussion of authorities would be a repetition of what he said.

Defendant further contends that it was reversible error for the trial court to refuse to give instruction 6-D, reading

as follows: "The Court instructs the jury that they should not find a verdict based on sympathy, but only on evidence produced before them."

The jurors were sworn to try the case on the evidence to be introduced and the principles of law to be given them by the court. The principles of law applicable to the evidence were fully set forth in ten instructions granted, five at the request of plaintiff and five at the request of defendant. The jury were told that the burden was on plaintiff to prove her case by a preponderance of the evidence, and that there could be no recovery unless the negligence of the defendant was so established.

Three Virginia cases are cited to support the contention. In two of them, *Chesapeake, etc., Ry. Co.* v. *Swartz*, 115 Va. 723, 80 S. E. 568, and *Arminius Chemical Co.* v. *White*, 112 Va. 250, 71 S. E. 637, all the instructions given were attached to the respective opinions. It is true that among the instructions in each case is found one warning the jury against permitting their sympathy to influence them in reaching a verdict, but in each instruction other principles of law applicable to the facts were included. Neither of the two opinions refers to the point at issue. The sympathy instructions were neither approved nor disapproved.

The other Virginia case cited to support defendant's contention is *Baltimore, etc., R. Co.* v. *McKenzie*, 81 Va. 71, 87. Judge Lewis effectively disposed of the question in the following language: "To tell a jury not to be swayed by passion or prejudice, is only mildly to instruct them not to violate their solemn oaths—an instruction, let us hope, unnecessary in the administration of justice in the courts of this Commonwealth."

██ We are aware of the fact that similar instructions have been given frequently by the trial courts, but in no case cited has the refusal of the trial court to give such an instruction been held reversible error. The exigencies of a trial may render such an instruction necessary, but a refusal to grant a similar instruction will not be held reversible error unless such an exigency is shown to have existed.

Defendant seriously contends that the court committed reversible error in giving instruction P-5, informing the jury that in the event they found for the plaintiff they should assess such damages as they deemed fair and just under all the circumstances of the case, "not exceeding $15,000.00."

Lord Campbell's Act (Code, sec. 5787) was amended in 1942 (Acts 1942, p. 337). It reads, in part, as follows: "The jury in any such action may award such damages as to it may seem fair and just, not exceeding fifteen thousand dollars * * * ." The general practice in such actions is for the court to instruct the jury that a verdict for plaintiff cannot exceed the amount fixed by statute. Prior to the 1942 amendment, this amount was $10,000. The plaintiff claimed $15,000 in her notice of motion and received a verdict of $5,000. This assignment of error is wholly without merit.

The judgment of the trial court is

*Affirmed.*