# Richmond

## ATLANTIC COAST LINE RAILROAD COMPANY v. O. B. GATES, SHERIFF, AND AS SUCH ADMINISTRATOR OF THE ESTATE OF ALEXANDER ASHLOCK.

April 21, 1947.

Record No. 3175.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*J. M. Townsend* and *M. A. Cogbill*, for the plaintiff in error.

*William Old*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was brought to recover damages for the death of the plaintiff's intestate, Alexander Ashlock, who, while lying prone, at night, between the rails of the defendant's railroad, was run over and killed by a train of the defendant. There was a verdict and judgment for the plaintiff, and the defendant assigns error.

The accident occurred about 11:00 o'clock on the night of Sunday, August 12, 1945, in Chesterfield county, upon the private right of way of the defendant, between Midlothian Turnpike crossing, in the county, and Hull street crossing, in the city of Richmond, Virginia. The night was dark but the weather was clear.

Alexander Ashlock was a colored man about fifty years of age. He had been employed, for a long period of years as a laborer, at a lumber plant located outside the limits of the city of Richmond upon the James River belt line of the defendant's railroad. The belt line is a single track connecting the yard of the railroad, south of Richmond, with its main line west of Richmond, and used for moving freight cars in and out of the city. As the track proceeds from Midlothian Turnpike towards Hull street, it is upgrade to the location of the lumber plant mentioned, and then it has a 1% downgrade to Hull street,—that is, a grade of about 52 feet to a mile. The crest of the grade is 1650 feet north of

Hull street, and the tracks are straight from the crest of the grade to Hull street. The tracks are in a deep cut, with trees on either side. The employees of the railroad knew that the right of way was sometimes used as a walkway by persons, especially during the daytime.

The train involved in the accident consisted of two Diesel units and a caboose, altogether 150 feet in length and weighed roughly about one-half million pounds. It was equipped with approved brakes, and lights in good working order. The lights would show up a standing man at least 800 feet distant.

The engineer testified that, running towards Hull street at a speed of about 25 miles per hour, he blew his whistle and rang his bell continuously as he approached the Midlothian Turnpike crossing; that after he crossed the 'pike, he applied his brakes and reduced his speed to 20 miles an hour as it reached the crest of the grade; and that his headlight did not show the track beyond the summit of the grade until his engine had gotten fully on the downgrade. He said he was keeping a lookout and first saw an object on the track about 200 feet ahead of the engine; that this object looked like an old sack until he got within 50 to 75 feet of it, when he saw that it was a man lying inside the rails, with his head next to the left rail; and that he then immediately applied his brakes in emergency, the engine being already shut off. The train ran a distance of six car lengths, about 300 to 350 feet after the application of the brakes. The engineer further said that, if the brakes had been applied when he first saw the object, it would have been impossible to have stopped the train on the downgrade under 300 to 500 feet.

When asked the color of Ashlock's clothing, the engineer said, "It was the color of the track; it was dark brown clothing and he was a ginger cake darkie, about the color of his clothes."

The fireman of the engine testified that he first saw an object on the track when the engine was about 300 feet from it; that it looked like a bag used by the section foreman to hold wooden spikes, and not like a man; that he and the

engineer recognized the object as a man lying between the rails at the same time, that is, when they were about 50 to 75 feet distant; that the man's clothing was about the color of the track; that the downgrade was the steepest on the line of the railroad; and that the engine's emergency brakes were promptly applied and the engine made a good stop.

J. A. Holdren, the road foreman of engines of the defendant railroad, said that, running at a speed of 20 miles an hour on the particular grade involved, the train could not have been stopped in less than 400 to 500 feet from the place of the application of the brakes.

The body of Ashlock was found 964 feet north of the Hull street crossing by actual measurement of a police officer, who came promptly to the scene of the accident, although there are some estimates of the distance made by witnesses on a dark night which placed the body nearer Hull street.

One witness testified that she saw a man, answering to the description of Ashlock, sitting on the railroad ties near the Hull street crossing shortly before Ashlock was killed. It was disclosed that Ashlock lived in a shack at the lumber plant on the line of the railroad, and that he frequently visited his old home near Williamsburg on weekends. He was presumably returning to the shack where he lived at the time of his death. The evidence does not disclose why he was lying between the rails; but there is evidence that at times he drank to excess and sometimes had fainting spells.

There is no contradiction of the foregoing evidence, except estimates made on the dark night as to the location of the body of the decedent, and the point where the engine stopped after the accident. The estimate as to the distance of the body from Hull street must give way to measurement actually made by a disinterested person.

The duty of a railroad company to licensees and trespassers on its tracks has been established in Virginia in numerous cases. Conceding, in this case, that plaintiff's decedent had acquired a license to walk along the defendant's right of way, he had no license to lie down between the rails of its track in the nighttime or daytime. Ashlock was a trespasser

and the trial court so told the jury in its instructions. We need, therefore, consider only the duty of a railroad to a trespasser on its right of way.

The principles of law stated in *Virginia Ry., etc., Co.* v. *Winstead*, 119 Va. 326, 89 S. E. 83, are applicable here. In that case, a drunken man was lying on the tracks of an electric railway, in the street in the city of Norfolk. The motorman of the electric street car saw an object 40 to 50 feet ahead on the track, which he took to be a piece of paper or trash. When within 8 to 20 feet of the object, he discovered that it was a man. He then applied the brakes, but it was too late to avoid running over and killing the man. One of the contentions made was that the street car did not have a proper headlight. We held that the duty to have a proper headlight applied only to "persons using the streets in the usual and ordinary way," and said, on page 329:

" * * * We are further of opinion, however, that there was no duty of prevision owing by it to persons who might, because intoxicated or for any other reason, lie down in practical disguise on or near the track. As to such persons, the only duty of a street car company is to use reasonable care not to injure them after their peril has been discovered, or would have been discovered by due care in the use of such facilities and equipment as were required by their duty, *not to such persons,* but to persons using the streets in some such way as was to be reasonably expected. When Winstead became intoxicated and laid down in dangerous proximity to the street car track, he placed himself out of the class of persons to whom the defendant company owed any duty of prevision, and brought his case within the reason of the decisions of this court in *Tucker* v. *Norfolk, etc., R. Co.,* 92 Va. 549, 24 S. E. 229, and *Norfolk, etc., R. Co.* v. *Dunnaway*, 93 Va. 29, 24 S. E. 698."

In 44 Am. Jur., Railroads, section 424, we find this statement:

" § 424. Trespasser.—It is the generally accepted rule that a railroad company owes no duty to a trespasser, that is, to one who enters the premises of another without license,

invitation, or other right, except after discovering his peril; that is, there is no duty owed to such persons except to abstain from wilfully or wantonly injuring them. There is no affirmative duty of care, and such persons must take the premises as they find them. * * * "

In *Connelly* v. *Virginian R. Co.*, 124 W. Va. 254, 20 S. E. (2d) 885, quoting with approval from the syllabus in *Smith* v. *International, etc., R. Co.*, 34 Tex. Civ. App. 209, 78 S. W. 556, it is said:

"A license to use a railroad track as a thoroughfare for pedestrians does not include a license to use the same for sleeping and sitting purposes, and persons so using it are trespassers, to whom the company owes no duty except to use every means to avoid injuring them after discovering their perilous position."

The general rule has been followed in Virginia in *Tucker* v. *Norfolk, etc., R. Co.*, 92 Va. 549, 24 S. E. 229; *Norfolk, etc., R. Co.* v. *Dunnaway*, 93 Va. 29, 40, 24 S. E. 698; *Norfolk, etc., R. Co.* v. *Wood*, 99 Va. 156, 37 S. E. 846; and other cases.

In *Tucker's Case*, where the facts are somewhat similar to those in the present case, we said:

"The fact that the engineer saw what he supposed to be an inanimate object, lying in the ditch at the side of the track, was not sufficient to impose upon him the duty to take steps to stop the train. No such degree of caution is required under the rule to which we have adverted. Railroad companies would fall far short of meeting the demands of the public if they had to stop whenever they saw an object lying on the side of the railroad, for fear it might be a trespasser in danger. When they have sufficient notice, or sufficient ground to believe that a trespasser is in danger, they owe him a duty of protection, as far as possible consistent with their higher duty to passengers. But when no one is known or believed to be in danger, they are under no obligation to prepare for what is not anticipated, or to stop and examine where no harm is suggested by the circumstances."

In *Dunnaway's Case*, a small eleven-year-old boy fell asleep

between the rails in the daytime. The engineer saw an object on the track, which he thought was a shadow or a bush cut from the right of way. He did not reduce his speed until he approached within 160 feet of the object. He then discovered that the object was a boy; but he was unable to stop before running over the boy, although he made every effort to do so. This court said:

"Upon the evidence in this cause we do not think that a jury would have been justified in believing that the company could have discovered that the object on the track was a human being earlier than it did, nor that it was possible after it discovered that the object was a human being to avoid the injury. Neither do we think that it was the duty of the railroad company to check or stop its train until it had discovered, or by ordinary care and caution, might have discovered, that the object on its track was a human being."

In *Wood's Case*, we find the following:

"Ordinarily the only duty a railroad company owes to a trespasser on its premises is to do him no intentional or wilful injury. It does not owe him the duty of caution or vigilance until it has such notice, or such reason to believe that he may be in danger, as would necessarily put a prudent man on the alert. *Seaboard, etc., R. Co.* v. *Joyner*, 92 Va. 354, 23 S. E. 773; *Tucker* v. *Norfolk, etc., R. Co.*, 92 Va. 549, 24 S. E. 229; *Norfolk, etc., R. Co.* v. *Dunnaway*, 93 Va. 29, 24 S. E. 698; *Blankenship* v. *Chesapeake, etc., R. Co.*, 94 Va. 449, 27 S. E. 20."

In *Hawkins* v. *Beecham*, 168 Va. 553, 560, 191 S. E. 640, in summing up the duty of a railroad company to licensees and trespassers, it is said:

" * * * Neither as to bare licensees nor as to trespassers is there any duty of prevision. Preparations for their discovery are not necessary, and it is not necessary to have a lookout on the front car, for such would be a preparation for their discovery. But where the roadbed is used as a walkway by many people, when this fact is known, reasonable care is necessary—headlights are not; a special lookout is not, neither are movements in any particular manner, for, as we

have seen, prevision is not required. What is reasonable care with facilities at hand and under circumstances as they exist, is, within fair limits, a jury question. * * * "

From these cases it may be readily deduced that there is no absolute duty upon the railroad company to discover trespassers upon their property, that is, to make preparations for their discovery, but to use ordinary care to prevent an injury to such person after discovering him to be in peril.

Applying the general rule to the facts of this case, we find that when Ashlock ceased to use the right of way of the railroad company for the purpose of travel, and lay down motionless upon its ties or became unconscious and fell down, he became a trespasser. The railroad company was under no obligation to anticipate his presence in that condition. There is no evidence, under the stated circumstances and with the facilities at hand, that the object seen by the train crew in this case could sooner have been discovered to be the body of a man. There is no conflict in the evidence that the unconscious man was not discovered until it was too late to prevent injury to him. There is no evidence that the agents of the railroad company omitted any duty after becoming aware of the danger to the decedent.

The cases of *Blankenship* v. *Chesapeake, etc., R. Co.*, 94 Va. 449, 27 S. E. 20; *Norfolk, etc., R. Co.* v. *Henderson*, 132 Va. 297, 111 S. E. 277, 279; and *Norfolk Southern Ry. Co.* v. *Wood*, 182 Va. 30, 28 S. E. (2d) 15, may be readily distinguished on the facts from the present case. In each of those cases, the injured person was a child of tender years, and the facts and circumstances attending their injuries were materially different from those here.

Paraphrasing the language of Judge Kelly in *Virginia Ry., etc., Co.* v. *Winstead, supra,* it may be said: In the present case, the evidence leaves no room for doubt that if Ashlock had been standing or walking on or near the track where he was struck or making any other customary use of the right of way at that point, the headlights of the engine would have been sufficient to disclose the fact of his presence from the point at which the object was first seen, and in time for

the accident to have been possibly averted. Lying as he was, prone and motionless inside the rails, he, at first sight, presented the appearance of a sack or bag threatening no harm to the train. The trainmen were looking ahead, and would have seen a man using the track in the usual way, in time to have done whatever prudence might have dictated for protection. After the engine was close enough to disclose that the object was a human being, the engineer did all he could to stop in time to save him from injury. There were no circumstances which imposed on him the duty to apply his brakes sooner than he did.

Since there was no evidence to support the verdict of the jury, it becomes our duty to set it aside, reverse the judgment entered thereon, and here enter final judgment for the defendant. Virginia Code, 1942, (Michie) section 6363. It is so ordered.

*Reversed and final judgment.*