# Richmond

ADDIE H. GALLAGHER V. JAMES G. STATHIS, ADM'R, ETC.

June 9, 1947.

Record No. 3206.

Present, All the Justices.

The opinion states the case.

*James G. Martin & Son* and *J. McBryde Webb*, for the plaintiff in error.

*J. L. Broudy* and *M. R. Broudy*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

The plaintiff in error, Mrs. Gallagher, is the owner of a three-story frame dwelling, which she acquired on May 8, 1936. The first and second floors of this building were each occupied by two families, and the third floor was occupied by the Stathis family consisting of Mr. and Mrs. Stathis and their three children, Newton Edward Stathis, five years old, James G. Stathis, Jr., age three, and Janice Regina Stathis, age six. This was the state of occupancy on December 13, 1944, when a fire occurred, which took the lives of the two little boys, one Newton Edward, whose death is the subject of this suit.

The third floor was the attic of the building, which was converted into a three-room apartment. There were two stairways from the ground or first floor to the second floor, and from the second floor to the attic apartment there was a single winding stairway leading to the kitchen of that apartment. One of the stairways from the first floor to the second was an exterior stairway, located at the rear of the dwelling and the other was an interior one, at the front. The kitchen in the attic was in the rear and contained one window, from which the occupants could reach the roof of the second story of the premises which projected from the building. Close to this window was the opening of the stairway which led from the kitchen to the second floor.

Next to the kitchen, going to the front of the apartment, a doorway led into a middle room in which there were no windows. Another doorway led from this room into the front room, which was used as the bedroom of the occupants. This front room had two windows, one facing Olney Road at the front of the house and the other opening on the side. From this window on the side, there was a drop of about twenty feet to the nearest level, which was a projection of the second story roof, and an alley extended along the side of the house. The front window facing Olney Road was some twelve feet above the top of the front porch.

The fire occurred in the morning. Mr. Stathis had left home and Mrs. Stathis and her three children were in the front room. Smoke, followed by flames, was seen by some of the neighbors issuing from the attic apartment. The fire made quick progress. The mother became frantic for the safety of her children. She opened the door leading into the kitchen, to find it enveloped in flames. The means of escape by way of the kitchen stairway was cut off. Her screams at the front window of the apartment at the front attracted the attention of a sailor and a civilian who were passing. The former secured a ladder nearby and reached the top of the front porch where he caught the little girl who dropped from her mother's arms. The mother, badly burned, collapsed and fell out of the window, landing on the roof of the porch.

Unable to be rescued, the two little boys ran under the bed where they perished from heat and suffocation produced by smoke.

The father, as administrator, instituted this suit against Mrs. Gallagher to recover damages on account of the death of the child, alleged to have been caused by the negligence of the owner in having converted the building into a tenement, with five apartments, occupied by five families living independently of each other, without obedience to the provisions of an ordinance requiring such a building to be equipped with at least two stairways.

Section 823 of the Building Code of the city of Norfolk defines a tenement house as follows:

"Any house or building or portion thereof, which is designed to be or is used or occupied as the home or residence of more than two (2) families living independently of each other, but having a common right in the halls and stairways, water closets or toilet rooms or any of them."

Section 958 of the Building Code referring to hotels, apartments, clubs, and tenement houses, provides that each building of these grades, "more than two stories high", shall have at least two stairways. The sections of the Building Code of the city of Norfolk which are involved in this case became effective in May, 1918, and the applicable amendments thereto were adopted in 1930.

Section 775 in part is as follows:

"This Code shall apply to future building operations and new buildings to be erected in the city of Norfolk and nothing herein contained shall be deemed to have a retroactive effect or operation unless clearly so indicated."

The defendant contends that the quoted ordinance applied to future building operations, and inasmuch as the building in this case was built prior to the effective date of the Code, its provisions have no retroactive effect.

We do not think that this contention is sound in view of the effect of the amendments to the Code to be found in sections 778 and 779, which are as follows:

"Sec. 778—Changes in Grade of Occupancy.

"No building, structure, or part thereof, already erected, shall be used for any purpose or grade of occupancy unless the construction and arrangement of said building, structure, or part thereof be, or shall be altered so as to be, in accordance with the provisions of this Code for said grade of occupancy."

"Sec. 779—Change in Grade of Occupancy—Old Buildings.

"The grade of occupancy of any building, structure, or part thereof, constructed or erected prior to the date upon which this Code shall take effect, shall not be changed if the construction of said building, structure, or part thereof, does not already conform to the requirements of this Code for

the new grade of occupancy, unless the construction of said building, structure, or part thereof be so changed, in accordance with the requirements of this Code, as to conform to the said requirements for said new grade of occupancy."

We think it is clear that the provisions of the above sections are clearly comprehended in the condition expressed in section 775, that the section shall have no retroactive effect *"unless clearly* so *indicated"*. It is manifest that the building in question was altered by the defendant for the very purpose of changing the grade of occupancy. The apartment occupied by the Stathis family is denominated throughout the record as the *"attic"*. The word *"attic"* has a significance which use and custom have given it. It is used interchangeably with the word *"garret"*. They each denote that part of a house which is immediately under the roof. It is not usually used and equipped to dwell in, but for storage and ventilation purposes.

The war came on after the Pearl Harbor tragedy and almost immediately there came into being a demand for houses and living quarters. This, in turn, quickened the efforts of those who owned shelters of any sort to convert them into living quarters which would produce rents and profits.

The defendant in this case seized the opportunity to make a tenement out of this old dwelling. The evidence shows her awareness of the ordinance requirements, for in December, 1944, she saw a carpenter, J. H. Carney, about building additional steps up to the third story. Her attorney made this observation during the course of the trial:

"Originally, some two years before, she might have refused to rent at all, but she tried to get the steps fixed long before the fire, considerably before the fire, and it was impossible to get them (the Stathis family) out."

The Stathis tenancy began in February, 1943, when the rooms had not been finished, "just boards and paper". It does not appear just how the fire started. When Mrs. Stathis opened the kitchen door, one side of the room was enveloped

in flames. It was then and there that she was burned. The kitchen stairway exit was closed. There was no way of escape except through the windows of the front room. The occupants were trapped. There was a verdict of $8,000.00 in favor of the plaintiff, which was confirmed by the court. The facts must be therefore viewed in the light most favorable to the plaintiff.

The defense, in addition to urging the alleged inapplicability of the ordinances, assigned error based upon rulings of the trial court in excluding evidence that the Stathis rental was originally for a period of two weeks and its extension was based upon their representation that they had no children and likewise excluding evidence that some time before the fire the defendant endeavored to have a second stairway built to the third floor, but because of the war she could not procure the necessary materials. This is unimpressive for the reason that she continued to collect from them $12.00 per week on account of their occupancy and also for the further reason that when she put the Stathis family in possession, she did so in violation of the provisions of the ordinance, which violation continued.

The fourth assignment of error is based upon the action of the court in granting plaintiff instructions Nos. 1 and 2. No. 1 sets forth the ordinance requirements as to such tenements as the one in question and particularly as to the two stairways requirement, and No. 2 is concerned with the matter of the assessment of damages. These instructions, we think, correctly propound the law relating to the matter and we find no error in the fact that the court granted them. The fifth assignment of error is concerned with the court's refusal to grant instruction D-X, which is this:

"The court instructs the jury that there is no evidence of any pecuniary loss by the death of the child in question." We decided the contrary in the case of *Ratcliffe* v. *McDonald*, 123 Va. 781, 97 S. E. 307.

The defendant's objection to failure to give instruction D-Y dealing with her right to build a second pair of stairs at any place she pleased is unavailing because she

admits that she made an effort to have the second stairway built, which was frustrated by the conditions obtaining and again, because to build them arbitrarily without regard to providing a means of safe egress would defeat the benign purpose of the statute. The objection to the court's action in rejecting instruction D-8 asked for by the defendant, is not well taken because it is based upon the alleged contributory negligence of Mr. and Mrs. Stathis when there is no evidence of such negligence. The theory of the objection was that by living in the premises with only one stairway to the attic apartment, they waived the violation of the statutory provision and assumed the incident risk. This theory is without application here. It obscures from view the object of the ordinances regulating tenements. In the case of *Altz* v. *Leiberson*, 233 N. Y. 16, 19, 134 N. E. 703, this is said:

"We may be sure that the framers of this statute when regulating tenement life had uppermost in their thought the care of those who are unable to care for themselves." See also, *Adams* v. *Cumberland Inn Co.*, 117 Tenn. (9 Cates) 470, 481, 101 S. W. 428; *Burt* v. *Nichols*, 264 Mo. 1, 173 S. W. 681. The defendant cites the case of *Standard Oil Co.* v. *Roberts*, 130 Va. 532, 107 S. E. 838, as strengthening her position with regard to contributory negligence. It is ineffective, however, because in that case the plaintiff was injured while standing on the running board of a trailer car, and in doing so violated an ordinance of the city. The defendant was also in such violation in having his wagon standing in the street.

Of course, no such condition obtained in the case we are considering. The refusal of the court to grant instruction D-10 was not error. It is this:

"The court instructs the jury that they should decide this case on the law and evidence and regardless of the sympathy." A like instruction was refused in the case of *Norfolk Southern Ry. Co.* v. *Wood*, 182 Va. 30, 36, 37, 28 S. E. (2d) 15. The action of the trial court in that case was sustained by this court.

Instruction D-11 telling the jury that if the child's death was the result of a combination of unusual circumstances, no one of which could be said to be the direct cause, there could be no recovery because the law regarded the death as the result of pure accident, was properly refused. This, as well as all of the theories of the defendant, on the subject of proximate cause, was submitted to the jury by other apposite instructions.

As forecast, we affirm the judgment of the trial court as plainly right.

*Affirmed.*