# Richmond

## Washington and Old Dominion Railroad v. Goldine Taylor, Administratrix, &c.

November 22, 1948.

Record No. 3386.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan, Staples and Miller, JJ.

*Wilson M. Farr, Hardee Chambliss, Jr., John Alexander* and *Frank L. Ball,* for the plaintiff in error.

*James H. Simmonds, George Damm* and *Robert C. Coleburn,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Herbert Mason Taylor was run over and killed on the railroad tracks of the Washington and Old Dominion Railroad by one of its trains. Goldine Taylor qualified as his administratrix, and brought an action against the railroad for his death. The jury returned a verdict in her favor for $15,000, and the court entered judgment thereon.

The accident occurred at approximately 5:00 p. m. day-light saving time (4:00 p. m. eastern standard time) on Saturday, September 15, 1945. The weather was clear and the visibility good. At that time and prior thereto Taylor had been an employee of the navy yard. He was nearly 6 feet in height, weighed 200 pounds, and was lying upon the railroad track when a seven-car freight train, drawn by a Diesel locomotive, ran over him. The accident occurred at a point 75 feet from the east end of the overhead railroad bridge which crosses North Roosevelt street. After the accident there was found at the point of impact a quantity of cigarette butts, burnt matches, a paper bag with a one-fifth bottle of whiskey in it, lacking a cupful of being full, and two small paint brushes. The evidence is convincing that he was intoxicated at the time.

The railroad track was straight for a distance of 1,200 feet from the point where Taylor was struck, with a down-grade of 14½ feet every 1,200 feet. The evidence tends to prove that the train was approaching the spot where the decedent was lying at a speed of some 30 to 35 miles per hour. There was no speedometer on the locomotive. The engineer, Huffman, was sitting at his post on the right-hand side of the cab of the locomotive. He had been in the employ of the railroad for 28 years, and the other members of the crew consisted of a conductor and a brakeman. The conductor was sitting in the cab but did not see what happened because he was busily engaged in making up train sheets. Taylor was dressed in clothes described by some of the witnesses as similar to khaki army clothes. He wore dark shoes.

The engineer testified that as he rounded the curve some 1,200 feet away from where Taylor was lying he saw two boys come out of the bushes along the side of the track, and one of them was waving his hands over his head. He further testified that he watched these boys to see what they were going to do and later they went back into the bushes; that when he got to the point about where the boys had been standing he saw what he thought was a piece of

brown paper lying upon the track some 400 feet in front of the locomotive, at which time he made a slight application of the air brakes. After he had gone a distance of 100 to 125 feet from that point, although he did not know at that time that the object on the track was the body of a man, he put the train in emergency and threw on sand to bring the train to a stop. On re-direct examination he said he put on the sand and emergency brakes when he was opposite the boys, which was 400 feet from Taylor. This statement was evidently inaccurate for the train was stopped within approximately 300 feet after the emergency brake was applied. When the train hit Taylor it had been slowed down to three miles per hour, and after striking him it ran about 13 feet before it was completely stopped.

The testimony of the brakeman tends to corroborate that of the engineer. The testimony of the engineer and brakeman as to what the two boys were doing is contradicted by them. These boys, introduced for the plaintiff, were playmates and were 13 years of age when they testified as witnesses, and 12 years of age when the accident occurred. They had just returned from a movie and were playing in and around the railroad track on the afternoon of the accident. They testified that they had seen Taylor around four p. m. sitting on the ends of the ties and later lying between the rails with his legs across one rail; that they accosted him twice but received no response so had moved away in search of someone to help get him off the tracks, and that when they heard the approaching train they ran to the tracks at which time the train was some 1,200 feet away from Taylor. They looked back at that time and could still see Taylor lying on the track. They were 400 feet from him, between him and the train. They also testified that one of them, Charles Boldin, got in the middle of the track and waved his hands trying to halt the train. He then tried to pull his sweater up over his head to flag the train with it but did not succeed in getting it off. The train was approaching so close that his companion pulled him off the tracks just in time to save his life, the locomotive

being some 25 feet away from him at the time. They further testified that as the locomotive passed them they saw two men in the cab, one of whom had his back to them and the other of whom was facing them. No alarm was sounded to warn Taylor to get off the tracks.

In and around the railroad tracks many pedestrians over a period of years had passed. This portion of the track where the accident occurred had been used as a walkway for them going to and from work and by school children going to and from school. The area on both sides of the track had been developed and a number of residences built and occupied. This use of the track was thoroughly known to the operators of the train and the railroad company. Seven paths led to the railroad track in the 1,200 feet and they indicated considerable use. On both sides of the track weeds had grown to a height of 2 or 3 feet. In between the rails there was some grass 6 to 8 inches high. In the middle of the track the photograph shows a well-defined path.

The jury were taken to the scene for a view.

Counsel for the railroad contend that the plaintiff failed to prove any actionable negligence on its part; that the plaintiff's evidence proved that her decedent was a trespasser on the tracks, to whom the defendant owed no duty of prevision, and to whom it owed only the duty of not wantonly or wilfully injuring him after the servants of the defendant in charge of its train discovered his presence on the track; that the evidence disclosed that after the presence of the plaintiff's decedent became known they used every means in their power to bring the train to a stop to avoid injuring him, and that the decedent was guilty of negligence which was the sole proximate cause of his death.

On the other hand, counsel for the plaintiff contend that the railroad and its employees knew the tracks in the vicinity of the place of accident were in common use as a passageway by many persons every day and had been so used for many years prior to the time that Taylor was killed; that even if Taylor were guilty of contributory negligence in

going upon the tracks in an intoxicated condition and lying between the rails with his legs thrown across the south rail, thus placing himself in a position of peril, nevertheless, if the employees on the defendant's train saw *or by the exercise of reasonable care could have seen him within sufficient time to have avoided killing* or otherwise injuring him, with safety to themselves, they should have done so.

Strenuous effort is made on behalf of counsel for the railroad to discredit the testimony of the two witnesses, Charles Boldin and Thomas Thompson. Counsel contend that it is incredible and unworthy of belief and therefore the court should not consider it. While their testimony is in serious conflict with that of the engineer and the brakeman, this alone does not render it incredible. There may be some doubt as to how far the locomotive was from them when Thompson pulled Boldin from the center of the track. But in view of the fact that the train was bearing down closely to Boldin at a speed estimated at from 30 to 35 miles per hour, it might be expected that they would not be accurate in estimating the distance. If a train were approaching one in that situation a hundred feet away, it would no doubt appear to such person to be much closer than it really was. When the entire testimony of these two witnesses is read impartially it reveals that they were of the average or above the average in intelligence for boys of their age. The jury, in the exercise of its function, were justified in accepting their testimony which was to the effect that Boldin was between the rails doing his utmost to flag the train when he was pulled off the track by his companion, Thompson, and that as the engine passed they saw two men in the front of the engine, one of whom had his back to them and the other facing them. It must be remembered that the point at which these two witnesses were standing was some 400 feet from the point where Taylor was lying. There seems to be no material conflict as to this distance.

The engineer, as we have seen, testified that he stopped

his train within approximately 300 feet; that when he reached the point where the boys were standing he lightly applied his brakes, and that when he had continued 100 to 125 feet further he applied the sand and his emergency brakes. No doubt if he had applied the sand and the emergency brakes at the time he passed the two boys, as testified by him on redirect examination, he would have stopped his train approximately 100 feet before reaching Taylor.

The recent case of *Atlantic Coast Line R. Co.* v. *Gates*, 186 Va. 195, 42 S. E. (2d) 283, is distinguishable on the facts from the case at bar. There no conflict in the evidence appeared as to the distance at which the body of Ashlock could be seen lying between the rails. The train was ascending a grade in the nighttime and it was not until after the crest of the grade had been passed that the headlight of the engine disclosed a body on the track about 200 feet ahead of the engine, and that the body looked like an old sack until the engine was within 50 to 75 feet of it when it was discovered to be a man. The emergency brakes were applied and the train ran a distance of six car-lengths or between 300 and 350 feet after the application of the brakes. The uncontradicted evidence was that the train could not have been stopped on the downgrade under 300 to 500 feet and that after the body could have been discovered which was 200 feet ahead of the engine, the train could not have been stopped without hitting the object. Ashlock, the deceased, was held to be a trespasser, and a judgment in favor of his administrator was reversed.

The distinguishing feature between that case and this is that there the object on the track could not have been discovered in time to have averted running over it. Here, the jury could have found that the object on the track might have been discovered in time for the train to have been brought to a stop before reaching Taylor if we accept the testimony of witnesses, Boldin and Thompson.

In Virginia we are committed to the proposition in

cases of this kind that it is not necessary, in order for the plaintiff to recover, that the agents of the railroad company operating its train should actually know of the danger to which the person on the track is exposed. It is sufficient if what they see, whether animate or inanimate, would cause a person in the exercise of ordinary care to be alerted even though the object turn out to be a traspasser. In other words, it is not essential that the engineer should actually know that an object on the track is a human being. *If he, in the exercise of ordinary care, could have discovered that the object on the track* was a human being in time to have avoided running over him then the railroad is liable.

In *Seaboard, etc., R. Co.* v. *Joyner*, 92 Va. 354, 23 S. E. 773, a verdict in favor of the plaintiff was sustained by this court. There Joyner, the deceased, was sitting or lying upon the side of the tracks with his arm resting upon the north rail and his head lying in the hollow of his arm. He was some 500 or 600 yards from Branchville station; the day was clear, and the track straight, and the view from the station to Joyner was unobstructed. He was plainly visible. As the train moved from the station two colored men quit their work and ran to the track, one upon one side and one upon the other, waving and making every possible effort to stop the train. The engineer said that he thought these men were playing "Christmas tricks", and therefore did not apply his brakes or reverse the engine until it was too late. Joyner was struck and killed. The engineer said that he did not discover Joyner until he was some 60 yards from him and then applied his brakes. Keith, P., speaking for the court, adopted a statement taken from Shearman & Redfield on the Law of Negligence, 4th Ed., sec. 99, where it is said: " 'The plaintiff should recover, notwithstanding his own negligence exposed him to the risk of injury, if the injury of which he complains was proximately caused by the omission of the defendant, after having such notice of the plaintiff's danger as would put a prudent man upon his

guard, to use ordinary care for the purpose of avoiding such injury. It is not necessary that the defendant should actually know of the danger to which the plaintiff is exposed. It is enough if he has sufficient notice or belief to put a prudent man on the alert, and he does not take such precautions as a prudent man would take under similar notice or belief.' See *Donahoe* v. *Wabash, etc., Ry. Co.*, 83 Mo. 543; Bishop on Non-Contract Law, 1037; Beach on Con. Neg., p. 21."

The foregoing principle was recognized in *Tucker* v. *Norfolk, etc., R. Co.*, 92 Va. 549, 24 S. E. 229. At page 550, Judge Harrison said: "It is not necessary that the defendant should actually know of the danger to which the plaintiff is exposed. It is enough if he has sufficient notice or belief to put a prudent man on the alert, and he does not take such precautions as a prudent man would take under similar notice or belief."

In *Blankenship* v. *Chesapeake, etc., R. Co.*, 94 Va. 449, 27 S. E. 20, the court reiterated the rule: "Although the plaintiff may have been guilty of contributory negligence, he would still be entitled to recover if it appeared that the servants of the defendant in charge of the engine did not do all they could consistently with their own safety to avoid the injury after his danger was known, or might have been discovered by the exercise of ordinary care in keeping a lookout for persons at that point, as we have seen it was their duty to do, yet the court, by its instructions, makes the liability of the defendant depend upon their knowledge of his danger, and not upon what they might have known if they had exercised such care as the law required."

In *Washington, etc., Railway* v. *Jackson*, 117 Va. 636, at page 640, 85 S. E. 496, Whittle, J., speaking for the court, again reiterated the rule and adopted the statement taken from Shearman & Redfield on the Law of Negligence, 4th Ed., sec. 99, which has been hereinabove quoted. The same principle was again recognized in *Hawkins* v. *Beecham*, 168 Va. 553, 191 S. E. 640. Mr.

Justice Holt, delivering the opinion of the court in that case said: "Neither as to bare licensees nor as to trespassers is there any duty of prevision. Preparations for their discovery are not necessary, and it is not necessary to have a lookout on the front car, for such would be a preparation for their discovery. But where the roadbed is used as a walkway by many people, when this fact is known, reasonable care is necessary—headlights are not; a special lookout is not, neither are movements in any particular manner, for, as we have seen, prevision is not required. What is reasonable care, with facilities at hand and under circumstances as they exist, is, within fair limits, a jury question. * * * "

In *Norfolk Southern Ry. Co.* v. *Wood*, 182 Va. 30, at page 35, 28 S. E. (2d) 15, the general principle again was recognized to the effect that it was the duty of the defendant to exercise reasonable care to discover and not to injure persons whom (whether they were trespassers or licensees) it might reasonably expect to be on its tracks. We also held it to be a jury question as to whether the motorman, in the exercise of ordinary care, could have discovered the deceased in time to have stopped the motorbus before striking him.

See also, annotation in 120 A. L. R., 1076.

In *Virginia Ry., etc., Co.* v. *Winstead*, 119 Va. 326, 89 S. E. 83, the plaintiff's decedent was lying on the streetcar track in a drunken condition in the city of Norfolk. He could not have been seen by the motorman in the exercise of ordinary care in time to avoid striking him. The court held that while the headlight on the streetcar might not have been sufficient to enable the motorman to have seen him in time to stop, yet it was not the duty of the company to the deceased to equip its streetcar with a more powerful light; that it owed the decedent no duty of prevision and that the accident could not have been avoided with the equipment at hand.

There is nothing in *Norfolk, etc., R. Co.* v. *Dunnaway*, 93 Va. 29, 24 S. E. 698, which weakens the principle

adopted in Virginia. In fact, the very statement from Shearman & Redfield, Law of Negligence, 4th Ed., sec. 99, is approved in that case in express language at page 37. A recovery, however, was denied because the boy asleep on the tracks was not known or could not have been known to the engineer until it was too late to avoid striking him. There was in that case no superadded fact such as a person standing within the rails trying to flag the train as was in the case at bar. Here, if the engineer had been alerted when Boldin tried to flag the train, no doubt the tragedy would have been averted.

Judge Keith, in *Southern Ry. Co.* v. *Bailey*, 110 Va. 833, 67 S. E. 365, 27 L. R. A. (N. S.) 379, in discussing concurring negligence and the doctrine of the last clear chance, had this to say: "If it be the duty of a person upon the track of a railway to keep a constant lookout for approaching trains (and of this there can be no question), and if it be the duty of the servants of the company in control of the train to exercise reasonable care to discover the presence of a person upon the track, and if in the exercise of such reasonable care the presence of such person would be discovered, and the person on the track is injured and there be no other fact proved, then it is apparent that the case stated would be one of mutual and concurring negligence, and there can be no recovery. The duty was equal and each is equally guilty of its breach. If, however, it appears that those in control of a train, in the discharge of their admitted duty to keep a reasonable outlook, discover, or should have discovered, a person upon the track, and there be superadded any fact or circumstance brought home to their knowledge, sufficient to put a reasonable man upon his guard, that the person upon the track pays no heed to his danger and will take no step to secure his own safety, then the situation changes and the negligence of the person injured becomes the remote cause or mere condition of the accident, and the negligence of the railroad company the proximate cause, and there may be a recovery."

This statement was quoted and approved in *Gunter* v. *Southern Ry. Co.*, 126 Va. 565, at pages 575 and 576, 101 S. E. 885. It is, to some extent at least, a qualification of the general rule that the only duty of a railroad company owed to a trespasser on its premises is to do him no intentional or wilful injury after he is discovered.

Whether a person who comes upon the railroad tracks is a trespasser or a bare licensee is not always important where the railroad company and its employees know that the tracks are being used constantly as a walkway and the presence of persons along the tracks may reasonably be anticipated. If the trainmen see or should see, in the exercise of ordinary care, a trespasser in peril, it is their duty to avoid injuring him if it can be done consistently with safety to themselves and to passengers. Whether the trainmen, acting as prudent men, should discover a trespasser or a bare licensee upon the tracks in time to save him where they are to be anticipated, is for the jury under all of the surrounding circumstances.

The vital question in the case at bar is: Could the jury reasonably have found from the evidence that Tayor, lying in a position of peril on the track, should have been discovered by the engineer in the exercise of reasonable care in time for him to have stopped the train before striking him?

Taylor weighed 200 pounds. He was lying with his body between the rails and his legs extended over the south rail. His body might have been partially obscured by the grass between the tracks, yet the engineer knew that many persons walked in the path between the rails, among them children going to and from school. When his train rounded the curve he had an unobstructed view of the straight track ahead to where Taylor was lying, a distance of 1,200 feet. He was in an elevated position and in the front of the cab with a windshield that extended across its entire front width. He says that he saw Boldin waving his arms above his head. Boldin testified that he was in between the rails flagging the train. As we have already stated, the jury

could have accepted that statement. It constituted a super-added fact. From the testimony of both Boldin and Thompson the jury could have found that the engineer was not keeping a proper lookout ahead at the time the engine passed the boys. No whistle was sounded or bell rung to warn Boldin to get off the track though the train was approaching closely to him. The jury might have concluded that the engineer even failed to see Boldin from the fact that he failed to sound his whistle, and that he also failed to see Taylor.

There is also evidence that the emergency brakes and the sand did not go on until the engine was near the trestle which was a considerable distance nearer Taylor than the point where the boys were standing. If the engineer was correct when he said he made a "slight application" of air as he passed the boys the jury might have found that he then should have applied the emergency brakes, which would have stopped the train in time to have saved the life of Taylor, for he was then 400 feet away and the train could have been stopped within 300 feet.

From a consideration of the facts and circumstances the jury could have reasonably concluded that the engineer was not looking ahead, and that if the boys in looking backward did see Taylor lying on the track as they testified, some 400 feet away from where they were standing, the engineer should have seen him from his superior and elevated position in the cab. The evidence, we think, sustains the verdict.

There were many instructions offered by the defendant and refused by the court. In order to discuss them much that has been said would have to be repeated. The trial court adopted the prevailing rule in Virginia and refused most of the instructions because that rule was not embraced in them. Counsel for the defendant have consistently ignored the rule but have maintained that Taylor was a "drunken trespasser" to whom the railroad owed no duty other than not to wantonly and wilfully run its train over him after he was actually discovered. This is not the law

applicable to the facts in this case as we have attempted to show.

Instruction No. 4 reads: "Even if you believe from the evidence that the deceased was negligent in putting himself in a place of peril on the tracks, nevertheless, if you find that the defendant's employees saw, or by the exercise of reasonable care could have seen, within sufficient time to have avoided the accident with safety to themselves, that the deceased was in a perilous position from which he was unable to extricate himself, then you shall return a verdict for the plaintiff."

Instruction No. 2 reads as follows: "The court instructs the jury, even in the case of a trespasser, that after discovering an unknown object on its tracks, the employees of a railroad, though they believe the object to be inanimate, have a duty to keep a lookout until its character is determined, and as soon as the employees discover, or by the exercise of reasonable care could have discovered, such object to be a person, it is their duty to use reasonable care to avoid injuring or killing him; and if his danger is then obvious and imminent, they must use all the means which are available for his protection which are consistent with safety to themselves."

The two foregoing instructions seem applicable to the facts in this case. Knowing the general use of the tracks as a walkway, if the defendant's employees saw or could have seen, in the exercise of ordinary care, Taylor lying between the rails, even though he was a trespasser, it was the employees' duty to have avoided running over him if it could reasonably have been done. Likewise, if anything conveyed notice or warning to the employees that an object was on the track they should have been on their guard to avoid striking the object. If a person is walking between the rails the engineer probably could assume that he will timely step off the track, if he appears to be normal and in the possession of his faculties, but not so with an inanimate object or one asleep or intoxicated. When an object is seen between the rails in a place where pedestrians

walk every day, the engineer should keep a proper lookout to identify it as soon as possible. Therefore, we think instructions Nos. 2 and 4 are correct.

Instruction No. 3 reads as follows: "If you find that the tracks in the vicinity of the accident were in common use as a walkway then you are instructed it was the duty of the defendant's employees to exercise reasonable care to discover and not to injure or kill persons, whether trespassers or not, whom they might reasonably expect to be on the tracks at that point."

It is conceded that the tracks were in common use by many persons as a walkway and, of course, it was the duty of the defendant's employees to exercise reasonable care not to injure or kill them whether trespassers or not. We think that when this instruction is read with instruction C-c, offered at the request of the defendant but amended and granted by the court, it did not mislead the jury. Instruction C-c told the jury that the defendant did not owe Taylor any duty to run its trains at any particular speed, or to maintain its roadbed in proper condition, or to employ competent servants, or to sound any warning of the approach of its trains; that Taylor, in so using the tracks, took upon himself all of the ordinary risks of the business carried on at the time; and that the defendant did not owe him the duty of special lookout to discover him, but only owed him the duty of exercising ordinary care under all the circumstances to discover him in a condition of peril upon the tracks, and to thereafter only use such means as were available, consistent with safety to its employees, to bring the train to a stop.

We find no reversible error, therefore the judgment is affirmed.

*Affirmed.*