## Richmond

ELMER E. EISENHOWER, ET AL. v. VERGIE JETER, ADMINISTRATRIX
ETC.

April 27, 1964.

Record No. 5721.

Present, All the Justices.

*Wayne Lustig* (*Gordon E. Campbell*, on brief), for the plaintiffs in error.

*Sterling W. Walker* (*Victor J. Ashe*, on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was instituted by Vergie Jeter, administratrix of the estate of Herbert Jeter, deceased, to recover damages for the death of her husband, Herbert Jeter, which resulted from injuries sustained when he, a pedestrian, was struck while crossing a street by an automobile operated by Elmer E. Eisenhower and owned by D. Levitin & Sons, Incorporated.

A jury trial resulted in a verdict of $6,500.00 for the plaintiff, on which the trial court entered judgment.

The facts are fairly simple though not without conflict.

The accident occurred in Norfolk, Virginia, at approximately 12:40 p. m., on July 24, 1962, on Chesapeake Boulevard, at its junction with Auburn avenue. Chesapeake Boulevard, at that point, runs north and south, and is a two-lane highway, with a broken white line in the center separating northbound and southbound traffic. It is hard surfaced with dirt shoulders. Auburn avenue runs generally east and west, and enters Chesapeake Boulevard on the latter's eastern side; but does not continue beyond the western side thereof. Where the streets join there is a clearly marked crosswalk for pedestrians over Chesapeake Boulevard from its western to its eastern side. Code of Virginia, 1950, § 46.1-231.

The plaintiff testified that as she and her husband started to cross Chesapeake Boulevard from its western side to its eastern side, each looked north and south; and, seeing that the way was clear, her husband proceeded ahead, walking between the white lines of the crosswalk. She followed two or three feet behind him. Each was carrying a bag of groceries on their way home. She said that as her husband "got nearly cross," an automobile driven by the defendant, Eisenhower, struck him with great force and knocked him into the ditch.

John J. Lloyd, who was waiting nearby, on the east side of Chesapeake Boulevard, to take a passenger bus for downtown Norfolk, said that he saw Jeter and his wife on the other side of the

street as they walked to the intersection; that as they reached the intersection both stopped; that Jeter, prior to entering the crosswalk, "looked each way" up and down Chesapeake Boulevard; that at that time, he, the witness, saw the car driven by Eisenhower two blocks northerly from the crosswalk; that Jeter took two or three steps into the street between the white lines of the crosswalk, and apparently seeing the oncoming car near him, "tried to step back;" and that as he did so the car struck him. He estimated the speed of the approaching car at about 45 miles per hour. No other cars were observed as approaching.

A. T. Smith, who was driving an automobile westerly on Auburn avenue, approaching Chesapeake Boulevard, said that as he looked forward, he saw Jeter and his wife approach the crosswalk; that Jeter was ahead of Mrs. Jeter; that both stopped; that Jeter "looked for traffic" and then started across on the crosswalk; and that as he proceeded, the car driven by Eisenhower struck him. The witness did not hear any squeal of the car's brakes; but he said the tires left 70 to 80 feet of skidmarks on the pavement.

The day was clear and the roadways were dry. There was no regulation by traffic officers, nor traffic direction devices at the intersection. Both highways involved were within a residential district and the speed limit was 30 miles an hour. At the point of the accident, Chesapeake Boulevard is straight three miles to the north and one mile to the south.

Jeter received multiple injuries and bruises, from which he died later the same day. The doctor who attended him said he was an "elderly Negro," and there was filed a certificate of death showing that he was 70 years of age. Another exhibit showed that he was a retired railroad employee and received a monthly pension of $106.80.

Elmer E. Eisenhower testified that as he was driving at 15 to 18 miles an hour, and "just after" he "passed over the walkway," he saw Jeter and his wife walking arm in arm "down Chesapeake south;" that as he "passed over that walkway just about 8 or 10 feet from that they glanced to their left and noticed me coming there, and without any indication they were going to cross over there, they made a sudden—he did, a sudden cross right in front of me;" that it was his "guess" that Jeter was then about 3 feet from him; and he was unable to avoid striking him.

It was admitted that Eisenhower was, at the time, employed by

D. Levitin & Sons, Incorporated, and was operating the vehicle involved in the course of his employment.

Eisenhower and D. Levitin & Sons, Incorporated, defendants, assigned several grounds of error to the rulings of the trial court; but in their brief, and argument at the bar of this Court, they say there are but two questions presented on appeal. Those questions are whether two instructions given for the plaintiff, P-5 dealing with the last clear chance doctrine and P-8 dealing with the measure of damages are supported by the evidence.

Instruction P-5 reads as follows:

"The Court instructs the jury that although the jury may believe from the evidence that the deceased was negligent on the occasion in question, nevertheless, if you believe from a preponderance of the evidence that at the time of the accident the deceased was in a situation of peril from which he was not physically able to remove himself, and that the defendant saw or in the exercise of reasonable care should have seen, the deceased in his situation of peril in time to avoid the accident by using reasonable care, but that thereafter the defendant failed to exercise such care and that such failure was the sole proximate cause of the accident, then under these circumstances the defendant is liable and the jury shall return their verdict for the plaintiff."

In order to remove uncertainty regarding the application of the doctrine of last clear chance, we undertook in *Greear* v. *Noland Company*, 197 Va. 233, 237, 238, 89 S. E. 2d 49, to adopt a rule clearly setting out the governing principles. There we said that the doctrine of last clear chance applies to two types of plaintiffs:

"[1] Where the injured person has negligently placed himself in a situation of peril from which he is physically unable to remove himself, the defendant is liable if he saw, or should have seen, him in time to avert the accident by using reasonable care. [2] Where the plaintiff has negligently placed himself in a situation of peril from which he is physically able to remove himself, but is unconscious of his peril, the defendant is liable only if he saw the plaintiff and realized, or ought to have realized, his peril in time to avert the accident by using reasonable care."

This rule was subsequently approved in *Norfolk & Western Ry. Co.* v. *Hagy*, 201 Va. 183, 191, 110 S. E. 2d 177; *Jones* v. *Window Corporation*, 201 Va. 283, 290, 110 S. E. 2d 531; and *Smith* v. *Spradlin*, 204 Va. 509, 512, 132 S. E. 2d 455,

"The doctrine of last clear chance presupposes a situation where there is negligence on the part of defendant and contributory negligence on the part of plaintiff, which upon ordinary and purely legalistic principles would result in a finding in favor of defendant. However, for humane considerations and to avoid that harsh and inevitable result, the law permits two types of plaintiffs to recover, notwithstanding their negligence, if, and only if, certain circumstances exist. These circumstances are clearly and concisely stated in *Greear* v. *Noland Company*, 197 Va. 233, 238, 239, 89 S. E. 2d 49, 53, and quoted with approval in the very recent case of *Norfolk & Western Ry. Co.* v. *Hagy*, 201 Va. 183, 110 S. E. 2d 177." *Jones* v. *Window Corporation, supra*, 201 Va., at page 290.

In each of the two classes of cases in which the doctrine may be invoked, the plaintiff, by his negligence, has placed himself in a situation of peril, from which, in one class, "he is physically unable to remove himself," while in the other class, "he is physically able to remove himself" therefrom "but is unconscious of his peril."

The plaintiff here has, at no time, claimed that Jeter had "negligently placed himself in a situation of peril." All of her evidence supports her theory that the decedent was free from any negligence whatever. Thus, she did not bring herself within either of the two classes entitled to invoke the doctrine of last clear chance.

The doctrine means precisely what the name implies—that is, that one of the litigants had a last clear chance to avoid inflicting the damage or injury, notwithstanding the fact that the other litigant had previously, by his negligence, placed himself in a situation of peril. *Virginia E. & P. Co.* v. *Whitehurst*, 175 Va. 339, 347, 8 S. E. 2d 296; *Yellow Cab Corp.* v. *Henderson*, 178 Va. 207, 215, 16 S. E. 2d 389.

There is no evidence in this case as to whether or not Jeter was physically able to remove himself from a perilous situation, or that he was unconscious of his peril until he "tried to step back" at, or about, the moment the car struck him. Moreover, if it be assumed that Jeter was negligently inattentive in proceeding over the crosswalk, and thus placed himself in a position of danger, of which he was unconscious, still to entitle the plaintiff to recover, there must be evidence showing that after Eisenhower saw Jeter and realized, or ought to have realized, his peril, there was time for defendant to avert the accident by using reasonable care.

The uncontradicted testimony of Eisenhower was that he was only three feet from Jeter when he first saw the latter; and realized Jeter's

situation of peril; and that he immediately turned his car to the left, but was unable to avoid the impact within the time and distance involved. Cf. *Norfolk & Western Railway Company* v. *Hagy, supra,* 201 Va. and *Jones* v. *Window Corporation, supra,* 201 Va.

The doctrine of last clear chance was, therefore, inapplicable to the facts of this case. The case should have been submitted to the jury on settled principles of negligence and contributory negligence. If the jury believed the evidence of the plaintiff, she was entitled to recover. If, on the other hand, they believed the testimony of Eisenhower that Jeter was guilty of contributory negligence, she was not entitled to recover.

A paragraph in Instruction P-8 instructed the jury that if they found "for the plaintiff then in ascertaining the damages the plaintiff is entitled to recover, you may find the same with reference to the following:

"*First*, the pecuniary loss, if any, sustained by the wife of the deceased fixing such sum with reference to the probable earnings of the deceased taking into consideration his age, intelligence and health during what would have been his probable lifetime if he had not been killed; * * *."

Defendants objected to the foregoing statement on the ground that there was no evidence showing decedent's age, intelligence and health, and no proof of his probability of life in accordance with recognized mortality tables. It is true that there was no evidence of his intelligence and health, nor were there any mortality tables exhibited; but there was ample evidence to show his age, and that he was a retired employee of a railroad with a pension of $106.80 per month. Moreover, his death certificate, admitted in evidence without exception, showed that Jeter was 70 years of age.

We have held that the phrase "fair and just" in § 8-636, Code of Virginia, 1950, relating to the amount and distribution of damages in a case of an award for wrongful death, should be given a broad and liberal construction; and that the "phrase 'pecuniary loss' when used in an instruction in connection with what damages are recoverable, is to be given liberal interpretation." *Gough* v. *Shaner, Adm'r,* 197 Va. 572, 578, 579, 90 S. E. 2d 171.

In an action for wrongful death in this jurisdiction, it is not essential to prove the expectation of the life of the decedent by mortality tables. *Norfolk & Western Railway Company* v. *Phillips,* 100 Va. 362, 371, 41 S. E. 726.

It is well settled that instructions should be based upon the evidence in the case. In view of the award of only $6,500.00 damages for the death of Jeter, it is not likely that the omission of evidence as to his intelligence and health affected the jury's verdict. It cannot be said that Instruction P-8 was fully correct, in view of the omission of evidence on the subjects mentioned. On a new trial opportunity will be afforded for the presentation of such evidence.

For error of the court in granting Instruction P-5, the judgment complained of is reversed; the verdict set aside; and the case remanded for a new trial, not in conflict with the views herein expressed.

*Reversed and remanded.*