# Richmond

ANNIE TURNER, ADMINISTRATRIX, ETC. v. NORFOLK SOUTHERN
RAILWAY COMPANY.

November 30, 1964.

Recory No. 5801.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*Howard I. Legum* (*Fine, Fine, Legum, Schwan & Fine,* on brief),
for the plaintiff in error.

*William C. Worthington (Worthington, White & Harper, on brief), for the defendant in error.*

I'ANSON, J., delivered the opinion of the court.

Annie Turner, administratrix of the estate of James Turner, deceased, instituted this action to recover for the wrongful death of her intestate who was killed, while sitting on the end of a crosstie of a railroad track, by a train of the Norfolk Southern Railway Company, defendant herein. There was a jury trial, and after plaintiff rested her case the trial court sustained a motion to strike the evidence and entered summary judgment for the defendant. Plaintiff is here on a writ of error to this judgment.

Plaintiff contends that the trial court erred in (1) striking her evidence and entering summary judgment for the defendant; (2) excluding certain evidence; and (3) refusing to allow plaintiff to cross-examine the engineer, who was called as an adverse witness, on the grounds that she was taken by surprise.

The accident occurred at approximately 5 P. M., on June 17, 1961, in the city of Norfolk, Virginia, across from the city dump. The weather was clear. Photographs of the scene show double tracks running generally east and west, and looking to the east from the point where the decedent was struck, the direction from which the train came, the track is straight for several thousand feet.

The decedent was 52 years of age, weighed between 140 and 150 pounds, was a little over five feet tall, and he had been subject to epileptic seizures for a number of years. On the afternoon of his death he had gathered cabbage leaves in an orange crate from the city dump, which was north of the railroad tracks, and had started home when he sat down on a crosstie with his back against the north rail of the track nearest the city dump. Two young nephews of the decedent were with him when he gathered the cabbage leaves. When they left him he was sitting on the crosstie with his "elbows on his knees and his head hanging down like this" (indicating), and the orange crate was "kind of in front of him." Approximately ten minutes later he was struck and killed by defendant's train.

There was evidence that when the decedent suffered from an epileptic seizure he usually sat motionless, with his elbows resting on his knees and his head hanging down. A medical expert was of opinion

that decedent had suffered an epileptic seizure just prior to the accident and that it was impossible for him to move from the crosstie.

Defendant's diesel locomotive, with 23 loaded freight cars attached, was proceeding in a westerly direction, at a speed of 25 to 30 miles per hour, when it encountered dense smoke which was blowing across and down the tracks from Epstein's Junk Yard, located south of the tracks some 1000 to 1500 feet east of the city dump. The smoke was so dense that the engineer could see only 50 feet ahead of him. The train proceeded through the smoke approximately 100 to 150 feet before the engineer was able to observe a block signal on his right, which was amber, indicating that the train should proceed with caution, and he then reduced the speed to approximately 20 miles per hour.

When the train emerged from the smoke both the engineer and the fireman had a clear view of the track ahead and they saw an object leaning against the north rail, approximately 800 feet in front of them, which appeared to be a box. The engineer blew the whistle and the fireman rang the bell, and the speed of the train was reduced to 18 miles per hour. The engineer said that he blew the whistle because the object he saw could have been a human being, it not being unusual for people to be on the tracks in that area. When the locomotive was approximately 450 feet from the object the engineer realized that there was a man on the other side of the box, and he put on the emergency brakes. The train was brought to a stop 160 feet beyond the point where decedent was struck.

There was expert testimony that a train similar to the one here, operating under similar conditions, could be stopped within a distance of 450 feet. Defendant objected to the admissibility of this testimony, but since cross-error as to its admission was not assigned on this appeal (Rule 5:1, § 5) and it was considered by the trial court in passing on the motion to strike plaintiff's evidence, we shall likewise treat it as a part of the evidence to be considered.

Plaintiff says that whether the defendant's agents and employees were negligent and had a last clear chance to avoid the accident were factual questions that should have been left to the jury.

In *Washington & O. D. Railroad* v. *Taylor*, 188 Va. 458, 50 S. E. 2d 415, a man under the influence of intoxicants was lying across a railroad track and was run over and killed by a train. Plaintiff's intestate recovered a jury verdict on which judgment was entered and it was affirmed by this Court. There we said:

"In Virginia we are committed to the proposition in cases of this kind that it is not necessary, in order for the plaintiff to recover, that the agents of the railroad company operating its train should actually know of the danger to which the person on the track is exposed. It is sufficient if what they see, whether animate or inanimate, would cause a person in the exercise of ordinary care to be alerted even though the object turn out to be a trespasser. In other words, it is not essential that the engineer should actually know that an object on a track is a human being. *If he, in the exercise of ordinary care, could have discovered that the object on the track* was a human being in time to have avoided running over him then the railroad is liable." 188 Va. at pp. 465, 466, 50 S. E. 2d at p. 419. See also, 44 Am. Jur., Railroads, § 473, p. 709.

In *Greear* v. *Noland Company*, 197 Va. 233, 89 S. E. 49, we stated the rule governing the application of the last clear chance doctrine. There we said that the doctrine applies to two classes of plaintiffs:

"[1] Where the injured person has negligently placed himself in a situation of peril from which he is physically unable to remove himself, the defendant is liable if he saw, or should have seen, him in time to avert the accident by using reasonable care. [2] Where the plaintiff has negligently placed himself in a situation of peril from which he is physically able to remove himself, but is unconscious of his peril, the defendant is liable only if he saw the plaintiff and realized, or ought to have realized, his peril in time to avert the accident by using reasonable care." 197 Va. at pp. 238, 239, 89 S. E. 2d at p. 53.

We have subsequently approved this rule in *Norfolk & Western Ry. Co.* v. *Hagy*, 201 Va. 183, 191, 110 S. E. 2d 177, 183; *Jones* v. *Window Corp.*, 201 Va. 283, 290, 110 S. E. 2d 531, 536, 537; *Smith* v. *Spradlin*, 204 Va. 509, 512, 132 S. E. 2d 455, 457; *Eisenhower* v. *Jeter*, 205 Va. 159, 162, 135 S. E. 2d 786, 788.

If the doctrine of last clear chance is applicable under the facts in this case it falls within the first classification, since the decedent negligently placed himself in a position of peril from which he was physically unable to remove himself. The defendant, however, is not liable unless its agents and employees saw, or should have seen, the decedent in time to avert the accident by using reasonable care.

Thus if the defendant's engineer had a last clear chance to avoid striking the decedent, notwithstanding the fact that the decedent had

previously, by his negligence, placed himself in a situation of peril from which he was physically unable to remove himself, the defendant is liable. *Eisenhower* v. *Jeter, supra,* 205 Va. at p. 163, 135 S. E. 2d at pp. 788, 789.

The trial court having stricken plaintiff's evidence and entered judgment for the defendant, we must view the evidence in the light most favorable to plaintiff, and she is entitled to all reasonable inferences that may be drawn therefrom. *Smith* v. *New Dixie Lines,* 201 Va. 466, 470, 111 S. E. 2d 434, 437.

When the evidence is such that reasonable minds might draw different conclusions therefrom, it is a question for the jury whether a helpless plaintiff was seen, or should have been seen, in time to avoid injury to him by using reasonable care. *Washington & O. D. Railroad* v. *Taylor, supra.* See also, 75 C. J. S., Railroads, § 974(f), p. 419.

Here the evidence shows that after defendant's diesel locomotive emerged from the smoke both the engineer and fireman had a clear view of the track ahead and they saw an object on the track when the locomotive was approximately 800 feet from it. Even though the object appeared to be a box, the whistle was blown and the bell rung because the engineer thought it could be a human being since it was not uncommon for people to be on the tracks in that area. Thus the engineer was put on notice that the object he saw might be a human being. However the speed of the locomotive was reduced only two miles per hour, which was not enough to avoid striking the object when the engineer saw that there was a human being beside the box. It may be reasonably inferred from the evidence that the box was "kind of in front of" the decedent; that the view of the engineer and fireman, from their elevated positions on the locomotive, was not blocked by the orange crate, and that they could have seen the decedent sooner if they had exercised reasonable care in keeping a proper lookout.

But even if it be said that the engineer did not discover that a human being was behind the box until he was 450 feet away from it because his view was blocked, the testimony of the expert was that the engineer could have stopped the train within that distance. The engineer said he applied the emergency brakes when he saw the decedent 450 feet ahead, but the train was not brought to a stop until the locomotive had passed 160 feet beyond the point where it struck and killed the decedent. Thus it may be reasonably inferred from the

evidence that the engineer did not use reasonable care to keep the train under proper control.

Whether in the exercise of reasonable care defendant's engineer saw or should have seen the decedent in time to avert the accident, under all the facts and circumstances of this case, was a factual question on which reasonable men might disagree and the matter should have been submitted to the jury.

■ Plaintiff says the court erred in excluding the testimony of a police officer, who arrived on the scene approximately thirty minutes after the accident, as to what the engineer told him about the accident on the grounds that it was an admission against interest. There is no merit in this contention.

The general rule is, that a railway company is not bound by the "declarations or admissions of any of its servants beyond the immediate sphere of their agency, and during the transaction of the business in which they are employed." *Blue Ridge Light Co.* v. *Price*, 108 Va. 652, 655, 62 S. E. 938, 939. See also, *Transit Company* v. *Brickhouse, Adm'r*, 200 Va. 844, 847, 108 S. E. 2d 385, 387. Moreover, the engineer was not a party to this proceeding.

Plaintiff's contention that the court erred in refusing to allow her counsel to cross-examine the engineer, who was called as an adverse witness, because his testimony took her by surprise, will not arise on a retrial of this case and we need not now consider it.

For the reasons stated, the judgment of the court below is set aside, and the case is reversed and remanded for a new trial.

*Reversed and remanded.*